By the Court,

Nelson, C. J.
It appears, that as early as the 25th April, 1836, the board oDaldermen adopted a resolution, directing the street commissioner to report an ordinance for re-grading Chapel-street from Duane to Canal-street, and also the intersecting streets between Duane and York, according to lines drawn on a profile referred to as on file in the commissioner’s office. The resolution was sent- to the board of assistants, and adopted by them soon afterwards. On the 10 th May both boards adopted the ordinance reported by the commissioner for changing the’ grade of the streets and re-paving them, and appointed three assessors to make the necessary estimate and assessments. In the same month, the relator with others remonstrated against the contemplated improvement; but were induced to give up their opposition in consequence of representations by the commissioners, or some of them, that the expense would be trifling, &c.
*530 A written contract was entered into by the street commissioner, for the work, previous to June, 1836, and before the estimate and assessment were formally made. The expense of re-grading and paving Chapel-street between Murray and Duane-streets, and also a part of Varick-street and St.! John’s Lane, was included in the estimate and assessment, although those streets were not embraced in the ordinance of the common council. The| amount, however, is comparatively trifling. The assessors made -their estimate and assessment, amounting to $33,613.46, in the summer of 1837j and made a report to the boards ; which report was duly confirmed. In, June, 1837, the common council were applied to by a number [ *695 ] of persons interested, for relief, and to vacate the ^assessment. The board of assistants adopted resolutions granting the appli-i cations ; but the resolutions were never acted upon by the board of aider-men. There are many other matters detailed in the affidavits, on which the, motion for a certiorari is founded, not material to notice from the view I have taken of the case.
The opposing affidavit shows that ten days’ notice of the application for, confirmation of the report of estimate and assessment was given in some ten, of the city papers inviting, objections ; and farther, that about two thirds of the assessments have been paid by owners assessed. \
From the above, it appears that nearly five years have elapsed since these proceedings were commenced by the common council, and three years and an half have passed since the confirmation of the estimate and assessment of the commissioners. In the mean time the several streets have been graded' and paved, the sewers made, and two thirds of the tax paid by the owners., The objections urged for the allowance of the certiorari extend to almost every step from the adoption of the original ordinance in May, 1836, to the; confirmation of the assessment in June, 1837.; and no satisfactory reason is given for such great delay in applying for the remedy now sought. Having; a discretion in the matter, we are bound to regard the consequences that' must press upon the city at this late day if a certiorari be allowed, and to1 regulate our judgment, in some measure, accordingly. It would be unjust, and oppressive to interfere, if they have been greatly aggrava'ted by the ! delay. We should also look to the probable effect of quashing the proceed-, ings upon the parties themselves. For if the error is technical, and nothing ¡ substantial will be gained, the certiorari should be withheld. In the exer-; cise of a sound discretion, we cannot grant it where the fruits may be little more than a multiplication of costs and expenses, in addition to serious public ; inconvenience.
What then would be the legal effect of setting aside the assessment at; ¿his late day ? 1. The loss of the costs and expenses of making it, *531 and of the collection of two-thirds of *the amount, which ordinarily £ *696 ] is no inconsiderable sum; but I concede, if the remedy be promptly sought, this should not constitute a decisive objection. 2. The city, for aught I see, would immediately become subject to a suit by each person who has already paid his assessment: a somewhat formidable consequence, when the list of tax-payers embraces as it does here about tine thousand persons. 3. The city must also be subjected to the entire expense of the improvement, unless a new assessment can be made consistent with the law.
What benefit would .the persons assessed obtain ? If a reassessment could not be made, they would, of course, obtain exemption from the payment of any part of the tax ; but on looking at the act, R. S. of the city, P. 131, I am inclined to think this might be done, though it is unnecessary to express a definitive opinion here. An estimate of the expense should doubtless be made before the contracts are entered into, or the work commenced; but I do not perceive the importance of making the assessment before that-period, and there is nothing in the act making it expressly, or of necessity, a condition precedent. .The streets have been already graded and paved, and the common sewer made; these of course would remain undisturbed.
I am aware the counsel insist, that the original ordinance passed by the city council,110thMay, 1836,is void and should be quashed: because,!. The ayes and noes, on the passage of the resolution by the boards, were not taken, nor the journal of the proceedings published, according to the seventh section of the charter. R. S. of the city, P. 512. And 2. Because the board of aldermen and assistant aldermen were out of office ; their term having expired on the ninth day of May. As to the first ground, I am inclined to think the statute merely directory, and not imperative, or a condition to the validity of the ordinance ; and as to the second, it is by no means certain that the board might not act on the tenth day of May. By the fourth section, R. S. of the city, P. 512, the election takes place on the second Tuesday of April, and the aldermen are to be sworn into office on the *second Tuesday of May thereafter. In 1836, this was £ *697 ] the tenth day of the month. They are chosen for one year, § 3. The general rule is to exclude the day on which an act is to be done, from which time is to be computed in a statute. 2 Cowen, 606, and n ; 6 Id. 659. These officers are elected for a year, and are to be sworn into, office on a certain day, from which time their term begins; until then, they are not aldermen. Even fractions of a day may be regarded; and by common usage, the old board may go out at noon of the tenth, and the new board be then qualified. In the absence of such usage, I apprehend they held to the end of that day. I do not mean, however, to put the case on any view I might take of these objections ; they are fundamental, and if sound, show that the whole proceeding is without authority, and all concerned tres *532 passers; to which remedy the parties may resort if they think proper. I place my refusal to allow the certiorari upon the unreasonable delay in the application for it, and the serious consequences to the city which must necessarily follow the granting of it after such a lapse of time, during which the improvement has been finished, and two-thirds of the assessment paid by the owners. Even writs of error cannot be issued after two years from the rendition of the judgment, 2 R. S. 493, § 21; and in analogy to this statute, we should refuse a certiorari after the lapse of this period in an ordinary case ; much more ought we to refuse it in a case like the present. ¡
The right of the court to exercise a discretion, and the principles upon which it should be regulated, in these cases, will be found stated at large in .The People v. The Supervisors of Allegany, 15 Wendell, 198.
Motion denied, without costs.