By the Court. Sandford, J.
The principal point involved in the decision of this case, is the validity of an assessment for building a sewer, made for the first time, after the completion of the work. It is contended by the plaintiff, that the assessment, for the payment of which his property was seized by the collector, was invalid, because it was not made before the sewer in question was constructed, and before any contract was made for its execution.
*344 The general principles on which the plaintiff relies, are well settled and indisputable. The authority for making and collecting the assessment, is to be proved, and cannot be presumed or intended ; and each step in the process, must be shown to have been regular, and conformable to the statute conferring the power. The grant of power under which sewers are made, streets are regulated and paved, and many other improvements are effected, which are indispensable to the comfort and health of a great city, is to be found in the act of 1813, entitled, “ An Act to reduce several laws relating particularly to the city of New York, into one act,” (2 Rev. Laws, 342, 407.) The one hundred and seventy-fifth section, in substance enacts, that the corporation of the city may cause common sewers, &c., to be made in any part of the city, and may cause estimates of the expense of conforming to their regulation for making such sewers, to be made and a just and equitable assessment thereof among the owners or occupants of all the houses and lots intended to be benefited thereby, in proportion to the advantage which each shall be deemed to acquire.
The corporation is to appoint suitable persons to make every such estimate and assessment, who are to make the same after . being duly sworn, and certify the same to the common council, and being ratified, the assessment becomes conclusive upon the owners and occupants, and a lien on the lots assessed. The common council is further authorized to appoint a person to receive the same, and the owners or occupants are declared liable to pay their respective assessments to him; and in default of payment, a warrant issues, to levy the same by distress and sale-of the goods of such owners or occupants. The section provides, that the money when paid or recovered, “ shall be applied towards making such sewers, &c.”
The next section of the act, (§ 176,) authorizes the corporation if it appear on the completion of the sewer or other work directed to be made, that a greater sum of money had been expended in making the work than the sum estimated and collected, as before provided ; to cause a further assessment equal to the excess, to be made and collected in the same manner. And if the sum actually expended, prove to be less than the *345 sum estimated.and collected.; the surplus is to be returned to £-he persons from whom it was collected.
The defendant relies upon the inference derived .from these two sections, together with the first section of the act of May 14th, 1841, amending the act of 1840, relative to the collection of assessments,&c., in this city. (Laws of 1841, ch. 171, page 143.) As to the latter, it does not appear to us to throw any light on the question, whether the assessment ought to he made before or after the completion of the work.
Its scope and object are, to enable persons assessed to induce the assessors to mitigate or take off their assessment, not to oppose and defeat the construction of the work for which the burthen is imposed. This is -shown by what ensues after the objections are presented. The assessors either alter their assessment, and then all the effect and end of the .-statute directing notice is accomplished, or they decline to alter it, in which event they are to present the objections with 'their assessment to the common council, for their .action. If the common council confirm it? that is the end of .the matter. If the assessors alter the assessment so as to meet the views of the persons.objecting, the altered assessment is prssented to the common council without the objections, and is confirmed as a matter of course., _
Again, the ordinance directing these improvements, is enacted and becomes a law, before any step can be .taken under the 175th section towards making the estimate and assessment. Whatever may be the result of the assessment, the work itself is to be executed, unless the ordinance be repealed, or the municipal authorities take it upon themselves to nullify it If one assessment, on being presented for confirmation, be returned to the assessors for correction by the common council, it is their duty to make another; and to proceeduntil'one be made, which the common council will confirm.
The notice under the act of 1841, it is therefore quite obvious, was not intended to elicit objections to a proposed improvement or public work. We understand, that in addition to the officia publication of the proceedings of each board of the common *346 council, a very reasonable opportunity is in practice presented for interposing such objections, by the notices published by the street commissioner, giving information of the application to the common council for the construction of all public works of this description, pursuant to the seventeenth section of the city ordinance regulating his department.
If any person interested wish to oppose the making of the improvement, his course is to satisfy the board before which it is pending, or the committee to which it is referred, that the expense of the undertaking will exceed its benefit; or present such other reason as he may have for his objection. The board or the committee, if there be any doubt, may direct an estimate to be made, or resort to any other measure for their information ; but all this, to be effectual, should precede the ordinance.
To return to the act of 1813, it is a direct inference from the provisions stated, that the estimate and assessment for a sewer should be made before entering upon its construction, although the advantage of such a proceeding may not be quite so apparent ; and if there was no other enactment on the subject, it would remain to inquire how the omission affects the validity of the assessment.
We are referred by the defendant’s counsel to the two hundred and seventieth section of the same act, which authorizes the Corporation, in all cases where they may deem it necessary for the more speedy execution of the said by-laws or ordinances, or any of them, to cause all such works as may be necessary for any of the purposes aforesaid, to be executed and done at their own expense, on account of the persons respectively upon whom the same may be assessed and to levy the same by distress and sale of the goods of the owners or occupants of the property assessed, or to recover the assessment by action. The next section makes the amount so expended by the Corporation, an incumbrance ón the houses and lots assessed.
These sections are found under the head of “ Additional powers granted to the Corporation,” commencing with section 266 of the act of 1813. Section 267 gives to the Corporation power to make by-laws and ordinances for filing, draining and *347 regulating sunken, damp or unwholesome grounds, yards or cellars ; for filling water lots on the river fronts, and for making bulkheads and filling slips, and the like. The 269th section authorizes the Corporation to cause the expense of such works- to be estimated and assessed in the same manner as is directed in that act with respect to regulating the public streets.
It is argued on the part of the plaintiffs, that sections 270 and 271, are confined to the cases of sanatory regulation, authorized by the previous sections, where the public health requires speedy action, and do not extend to aiiy other public works or improvements.
As to this argument, the authority is not in terms so restricted, and we are not at liberty to assume that such was the intention of the legislature. The discretion to cause the work to be executed at the corporate expense is unlimited, unless it is confined by its immediate- connection with the 267th section, to the class of works authorized by that section. We need not consider the point, because the act of February 21st, 1824, (Laws of 1824, ch. 49, page 39,j was passed for the express purpose of removing all doubt on the subject. By the first section of that act, it is enacted, that the two hundred and seventieth section shall apply to all and every law, ordinance, order and direction, which the corporation is authorized to make, under and by virtue of the general act of 1813, or of any other act of the legislature. That section 271 shall in like manner apply thereto, and the assessments for the expense of the work ordered to be executed, may be made as directed in the 175th section of the same act, and may be enforced as is mentioned in the act of 1824.
The effect of these several statutory provisions, is to authorize the corporation, whenever an ordinance has been adopted for the construction of a sewer, or similar public work, to pursue either of two courses.
First, they may have an estimate andjfassessment of the probable expense made,! confirmed and collected; and then proceed to the -execution of the work. Or, second, they may execute-the work at their own expense, and after its completion and the *348 actual cost is ascertained, they may assess the same with «he charges, upon the' houses and lots benefited, and collect such assessments as before.
In> reference to the first mode, as no preliminary estimate made in good faith, will, in one instance out of twenty, correspond precisely with' the result1 of the actual expenditure, in nineteen eases out of twenty, there will have to be either' a second assessment made and collected to-supply the deficiency ■ or a surplus will' have to be returned’ to the parties assessed. The corporation would never undertake" the burthen of seeking out such parties- to refund their proportions; many of them would never hear of the surplus; the rights of others would he transmitted by death, insolvency or assignment, so as to make the collection of their proportions difficult or embarrassing; and the practical effect of the system would be, that all the original estimates would he with a wide margin to cover contingencies, and in order to avoid a second assessment, a surplus would be collected almost invariably, and a large portion of it would remain in the city treasury,- either uncalled for, or the occasion of perplexing claims.
Such, it appears to-us, will be the legitimate consequence of pursuing the mode derived by inference from sections 175 and 176 of the act of 1813; The other mode; in terms, requires the corporation to execute the work at their own expense in the first instance. No greater liability is incurred in the one mode than in the other. In both, the corporation is to be fully indemnified by the assessment. The difference is, that in theory, the money in the one case is collected and in hand, before the occasion for disbursing it arises ; while in the other case, the corporation advances the entire expenditure, and is subsequently reimbursed.
in its actual working, the former mode would be difficult, if not impracticable; giving to the plaintiff 7s argument its full Weight, and assuming that all the assessment must be “paid or recovered,” before the work can even be contracted. In most of the city improvements falling within the 175th section, the assessments are in part imposed on vacant lots. These, in many instances, (w'e might safely say, in most instances,) cannot he *349 collected of the owner personally. The only remedy is to collect them by the slow process of a sale of the lands assessed under the statute; and in the meantime the improvement, which has been ordered because of its present necessity, is deferred for an indefinite period.
We have traced these consequences of the two different modes of procedure permitted to the corporation, not because the inconveniences of the one, or the advantages of the other, can bend or control the statute, or authorize us to infer a power not definitely granted; but because they exhibit the object of the legislature in the passage of the act of 1824, and warrant us in giving a fair and liberal construction to its provisions.
Much stress was laid upon the necessity and importance of an estimate, as distinguished from the assessment. We have seen that the importance of the estimate, properly so called, precedes the passage of the law or ordinance. After the work is decreed to be made, the assessment making a just apportionment of the burthen, becomes the only material point of interest to the parties concerned.
There is no force in the plaintiff’s argument that section 270 of the act of 1813, merely changes the time of collecting the money, and does not refer to the time when the assessment shall be made. If we were to construe that section by itself, we could not hold that it required a conjectural assessment to be made before entering upon the work, which was not to be collected until the work was completed and the expenses all paid. The act of 1824 is, however, perfectly clear on this point. It is not the estimated cost, but the expense actually incurred with the interest, which is to be assessed on the owners or occupants.
Next, it is urged that in the case at bar, the corporation has manifested no intention to proceed under the 270th section, and the act of 1824. On the contrary, it is said, that instead of having the sewer constructed at their own expense, they expressly stipulated that the contractor should not receive any payment until the money should be collected on the assessment laid for that purpose.
1st. As to the intention manifested. The ordinance in ques *350 tion requires the construction of the sewer under the directions of the street commissioner and qne of the city surveyors, and appoints the street commissioner and two others to make the estimate and assessment. It is not questioned that it is the duty and the province of the street commissioner, to make all contracts for the construction of sewers ; and he made the contract in this case. Thus, he and the assessors were clothed with all the' discretion which could be exercised by the corporation, in adopting the one or the other of the modes for making the assessment which we have considered. They adopted the course of building the sewer first, and making the assessment after it was completed.
The common council confirmed the assessment, and thereby ratified what had been done. Hence, there is no doubt as to the intention of the corporation, to pursue the authority conferred by section 270 of the act of 1813, in connection with the act of 1824.
2d. But it is said, they have not constructed the sewer at their own expense; which means, they have so contracted as to avoid advancing the money; and it is alleged that the necessary effect has been to enhance the cost of the work. This ' may be, and probably is, the effect in some small degree, although we have no proof of it; and the enhanced expense we suppose, is not much greater than a second assessment would occasion. The same consequence would ensue from another and legal course, which we will presently mention; and the argument db inconvenienti, is neither very forcible, nor peculiar to the obnoxious proceeding. We ought also to observe that the work was advertised, and the proposals received, without the qualification which appears in the contract.
Our view of the matter is this. The jurisdiction of the corporation, is not to be determined by the circumstance of actual or constructive payment. The election to proceed in one mode or the other, is determined by actually proceeding, to execute the work before making an assessment. The corporate liability to pay the contract price was in this case incurred to the contractor. He had no claim or demand against any other person, natural or artificial. If the corporation should fail to make an *351 assessment, and collect it in a reasonable time, or if from any cause, they should proceed irregularly, so as to fail in making a valid assessment, the contractor would be enabled to recover the value of his services, notwithstanding the restriction in the contract, upon his demanding payment.
Suppose the corporation had agreed to pay the contractor in one year after date, with interest from the time fixed for the completion of the work; would any one doubt that an assessment could be made and collected after the work was done 1 Yet there would be no actual advance of money, and in respect of enhanced cost, the operation would be more open to observation than the contract made in the case before us.
This shows that the time and manner of defraying the expenses, when the corporation proceed under the 270th section, is not a test of their power to make an assessment. The statute does not restrict the corporation to any particular mode or form of liability; it does not require payment in cash during the progress, or at the completion of the work ; and it does not preclude the use of the corporate credit, either in an absolute or a qualified liability.
If there be any undue or injurious latitude allowed by the act to our municipality, the legislature must correct it. We cannot find in its supposed existence, a warrant for the narrow construction put upon the 270th section by the plaintiff’s counsel. If the mode and terms of payment adopted, be calculated to increase the expense, it may furnish a reasonable ground for objecting before the assessors to the imposition of the whole amount upon the property benefited. But we are satisfied that the validity of the assessment, the power to make any assessment, cannot depend upon the fact of payment by the corporation to the contractor, so long as they have the right, either to assess and collect the probable expense first, and then execute the work, or to execute it first and assess and collect afterwards.
If in the former mode of proceeding, the corporation should, after collecting the money, execute the work upon a long credit, the parties who have paid the assessment would have no redress ; and if a further assessment became necessary, the improvident use of the fimds first collected, would not affect or *352 impair its validity. And if the latter mode be adopted, it suffices for the parties interested, that an ordinance has directed the construction of the work, the work has been completed, and they are not responsible in any mode to the builders.
It is important to such parties, as well as to all who are interested as tax payers in the city expenditure, that sound discretion, good judgment, and rigid economy, be exercised in contracts for the public works and expenses of all kinds; but the disregard or omission of all these qualities, cannot affect the jurisdiction of the corporation to impose and collect the taxes and assessments authorized by law for defraying such expenditures.
Each party refers us to the adjudged cases, as sustaining his view of the law on this question. We do not find any reported cases in which it has been considered in connection with the act of 1824.
In Elmendorf v. The Mayor, &c., of New York, (25 Wend. 693,) the application was for the allowance of a certiorari, to review certain assessments for regulating and paving streets, and it was refused because of the lapse of time. The motion was made at the special term before Nelson, Ch. J., who, in noticing some of the points raised against the validity of the assessments, declared his opinion that an estimate should have been made before the work was commenced, but that an assessment could be made even at that day; that there was nothing in the act of 1813, making it expressly, or of necessity, a condition precedent.
In Doughty v. Hope, (3 Denio, 249,) it was decided at the circuit, that the assessment was void, because it was made after the improvement was completed, instead of its being made before the work was commenced. This decision was reversed by the late supreme court, which held, ¿hat although the estimate and assessment ought to precede the improvements, upon the construction of sections 175 and 176 of the act of 1813; yet the statute is in that respect directory to the corporation, and the omission to pursue it, did not invalidate the assessment. The case was finally decided in the court of appeals, on other grounds. (3 Denio, 594; 1 Comstock’s R. 79.) It stands as *353 the direct adjudication of the late supreme court, to the effect that an assessment, like the one before us, is valid, independent of the act of 1824, and the 270th section of the act of 1813.
We are not aware that there has been any different ruling in the present supreme court, and if there had been, we should necessarily have conceded to the former court the meed of authority. We were induced to give the subject a full examination upon the construction of all the statutes, irrespective of the adjudications, because of its magnitude, and the variety of interests involved; and our conclusion is clear, both on principle and authority, that the assessment in question was legal and valid.
The next point of the plaintiff is, that he was not assessed, and there was no authority for collecting the assessment of him. It appears that in the assessment roll, J. Brown is described as the owner, and E. L. Bolles as the occupant of the store and lot, in respect of which the assessment or charge collected of the plaintiff was imposed. The warrant under which the defendant levied, directed him to collect from the several persons named in the assessment list, “ or who may occupy the premises.” The plaintiff was an occupant of the lot assessed.
Does the statute authorize the collection from an occupant, - who has not been assessed as such by name ? The expense of the improvement is to be assessed among the owners or occupants of the houses and lots benefited. As we understand it, this can only be done, as to occupants at least, by describing them as such in the assessment list, and designating them by name. So the assessors, in this instance, appear to have understood the law, and they assessed Brown as owner, and Bolles as an occupant. When confirmed, the assessment becomes binding and conclusive on the owners and occupants of the lots charged ; of course, upon the owners and occupants designated in the rate or list so confirmed.
"It would be absurd to say, that it becomes binding and conclusive upon a tenant who first comes into the occupation after the assessment has been confirmed.. The law might be so framed as to include all future occupants, but so far as we have now traced its provisions, it clearly does not embrace them.
*354 Then, as to the subsequent proceedings, “ such owners and occupants,” are declared liable to pay upon demand, and in default of payment, the warrant issues to levy the assessment by distress of the goods “of such owner or occupant.” We think this clearly means, the occupant assessed 6as such in the list by name, and not any person not named, who may chance to be occupying the premises when the collector visits them.
The authority to issue such a roving distress warrant, may be granted, if the legislature deem it necessary; but it cannot be established by remote inference, still less from its expediency in a given case. Under the statute in question, it is incumbent on the assessors to ascertain the names of occupants, if it be intended to resort to them for payment. If they are not inserted in the list, the assessment must be collected from the owner, or from the land. In Doughty v. Hope, before cited, it was held at the circuit, that a warrant like this could not issue against an occupant not named ; and the supreme court acquiesced in that opinion, although the point was not decided. The inconvenience to an outgoing tenant, assessed as occupant, which has been suggested, is no greater than the incovenience which may occur, on the defendant’s construction, to one who comes in long after the assessment has been confirmed, and who never hears of it till his goods are seized by the collector. The former, in theory at least, has notice of the making of the assessment, and can protect himself under the 175th section of the act of 1813.
The warrant, in our judgment, went too far in directing the collector to distrain upon occupants who were not named in the list; and as this defect appeared on its face, it constitutes no defence to the collector for levying upon the plaintiff’s goods, within the principle of the authorities cited in behalf of the defendant.
It is said, that the defendant was not a public officer, authorized to execute the warrant. We think this criticism is too refined. The statute authorizes the corporation to appoint a person to receive the assessments ; and if not paid, to levy the same by a distress warrant. The intention is plain, that the warrant should issue to the collector. If otherwise, it must *355 issue to some person, and the collector is eligible to perform the duty.
The defendant contends that the action cannot be sustained because^ the payment was justly due from the plaintiff, it was voluntarily made, and no tresspass was committed. The facts are, that the collector levied on his goods by virtue of a warrant against other persons, issued for a debt, which he was under no obligation to pay; threatened to remove the property, and gave him written notice that he would sell it on a specified day, if he did not previously pay the demand. The plaintiff paid it when the collector was about to remove his property for sale. We have no doubt that the defendant is liable in trespass.
The plaintiff is entitled to judgment on the verdict, on the ground that he was not named in the assessment list as occupant of the store and lot assessed.
Judgment accordingly.