## ROBINSON et al. v. BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SACRAMENTO.

UNDER the Consolidation Act of 1858, the Board of Supervisors of the city and county of Sacramento have no power to create the office of Assistant Clerk to the Board, nor to raise the salaries fixed in the twenty-fourth section of the act, and their action in creating such office and raising such salaries may be reviewed on *certiorari*.

That act is an enabling statute, creating a Board with special powers and jurisdiction, and the Board has only the power conferred by the act.

As to how far and when the proceedings of such Boards are judicial, and hence reviewable on *certiorari*, and how far and when legislative, and hence not so to be reviewed, discussed.

APPEAL from the Sixth District.

The Court below, in the first instance, ordered the writ to issue, and in the meantime restrained defendants from further proceedings. Defendants moved to dismiss the petition, and demurred on the ground that the proceedings sought to be reviewed were not judicial in their character, and hence that *certiorari* would not lie. After the return to the writ, the Court dismissed the petition. Relators appeal.

*Winans & Hyer, and Monson & Sunderland,* for Appellants.

*E. B. Crocker,* for Respondents.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

This was a proceeding by the plaintiffs, tax-payers, by petition for *certiorari* to bring up certain proceedings of the Board of Supervisors of Sacramento county. These proceedings involved an ordinance, number ninety-six, the second and third sections of which are as follow: "Section 2. To the Under Sheriff, one hundred and fifty dollars per month; to the County Clerk's chief deputy in the District Court, one hundred and fifty dollars per month; to the County Clerk's chief deputy in the Recorder's office, one hundred and fifty dollars per month; to the County Clerk's chief deputy in the general office, one hundred and twenty-five dollars per month. Sec. 3. Section one of Ordinance No. 78, of which this section is amendatory, is hereby amended so as to read as follows: Sec. 1. The office of Assistant Clerk of the Board of

Supervisors is hereby created; said Assistant to be appointed by the Clerk of the Board, and to receive a salary of one hundred and fifty dollars per month, payable one-half out of the Contingent Fund of the county and one-half out of the Contingent Fund of the city."

The petitioners allege that the Supervisors have allowed the salaries to the Assistant Clerk of the Board and to the other Clerks mentioned; and that the Auditor will draw his warrants for them, and they will be paid if the Court does not interpose.

The only difficulty we have experienced in the case is the technical question of the remedy selected by the relators.    It is argued for the defendants that *certiorari* will not lie in such a case; that this writ is limited to a review of judicial actions and proceedings by the inferior tribunal, and that this ordinance is a legislative act and not of a judicial nature.    We were strongly inclined, on the argument, to this view; but a further examination has led us to abandon it.    When the term "judicial" is applied to the action of these Boards, it is not to be received in the sense usually applied to Courts of justice.    Thus, Judge Bronson speaks, in *Supervisors, etc.* v. *Briggs*, (2 Denio, 26) of the settlement and allowance of an account by the Board as an adjudication of the matter by a proper tribunal, and therefore conclusive.    (See also, 9 Wend. 508.) So in *Gillespie* v. *Broas* (23 Barb. 378).    In *People* v. *Mayor of New York*, (5 Barb. 45) the Court say: "There can be no doubt that a *certiorari* will lie to review the *judicial* acts of municipal corporations. That was admitted in the case of *Mount Morris Square*, (2 Hill, 14) cited by the defendant's counsel, and is in conformity with the decisions of the late Supreme Court in several antecedent cases.    (*Elmendorf* v. *The Mayor of New York*, 25 Wend. 693; *Le Roy* v. *The same defendants*, 20 John. 430.)    The authorities are equally clear, that if the act complained of is simply *ministerial*, it cannot ordinarily be reviewed on *certiorari*.    Such was the ordinance of the Common Council for the construction of the sewer in question.    That was a simple exercise of their ministerial, or, if I may use the expression, legislative power.    That, if authorized by their charter, which it clearly was, resolved itself into a question of expediency, solely for their consideration, and which cannot be reviewed here.    But although the ordinance itself cannot, I think, be annulled by this Court, yet it is competent for us, in a proper case, to vacate the assessment of the Common Council in affirming those proceedings; as they then acted in a judicial capacity. That may be, although they do not constitute an ordinary judicial tri-

bunal. It is sufficient if they are invested by the Legislature with power to decide on the property or rights of the citizen. In making their decision they act judicially, whatever may be their public character. The defendants are authorized by the statute (2 R. L. of 1813, sec. 175) to *ratify* the estimate and assessment when made, and reported to them by the Commissioners, and then the same became binding and conclusive upon the owners and occupants of, and constitute a lien upon, the lots on which the assessments are made. In ratifying these proceedings of the Commissioners, the defendants unquestionably act judicially. It is not simply the performance of an act of their own, but it is *reviewing* and *deciding* upon the conduct of others. The Justices of this Court, in passing upon the proceedings of the Commissioners, in street cases, exercise a similar power; and it has been frequently decided that their acts in such cases may be reviewed on *certiorari*. And if, in this case, the defendants have committed a mistake in confirming acts not authorized by the statute, whereby the rights of the citizen are prejudiced, their error may be corrected by this Court. It would be intolerable to allow these corporations to proceed in the exercise of their numerous, and some of their almost arbitrary powers, without some corrective. It is true, that where their acts are simply void, the law will afford a remedy; but there are many cases where their acts would not be wholly nugatory, and yet they might be very oppressive; such, for instance, as adopting a wrong principle relative to assessments, by which a citizen might be subjected to a tax, who ought not to be taxed at all. There can be no doubt that if the estimate and assessment were substantially erroneous, and ought not to have been ratified by the Common Council, they may be vacated by this Court."

In *Gillespie* v. *Broas*, (23 Barb. S. C.) it was held that chancery would not interpose where the Supervisors had no power to select a site for a certain building, and where certain orders were issued without authority, but that *certiorari* was a proper remedy. In *Wilcox* v. *Washburn*, (16 Johns. 49) it was decided that the appointment of a Constable by Justices of the Sessions was a judicial act, revisable by *certiorari*.

*The People* v. *The Supervisors of El Dorado county* (8 Cal. 58) is closely analogous to this in principle. There the Board of Supervisors allowed the County Recorder seventy-five cents each for drawing certain warrants. This Court held that *certiorari* was the proper remedy. On looking into the ordinance brought up, it will be seen that the Board

undertake to appropriate in favor of third parties money of the treasury for certain services to be rendered, and that the ordinance directs the issuance of warrants for this purpose. This is equivalent to an auditing and allowing of a claim to this extent on the treasury, and involves the same exercise of judicial power as the case last referred to. In other words, the Board pass upon and decide upon the right to appropriate and allow this claim, and adjudge it to be disbursed. We do not see that this act does not partake of the nature of a contract with the binding force of an appropriation to meet it. Such a claim is not in principle different from an allowance or settlement of a claim or pretended claim, which is brought, it seems, within the power of the Courts to review on *certiorari*, when made without legal authority.

2. The next question is as to the legal authority of the Board to create the office of Assistant Clerk, and to raise the salaries of the other clerks above $1,200 per annum. And this question involves the construction of the Act of 1858, known as the Consolidation Act. That act is to be found in the Statutes of 1858 (269). The bill seems drawn in a spirit of jealous distrust, and is very restrictive in its provisions. By the twenty-fourth section, a Clerk of the Board of Supervisors is allowed a salary of $2,500, " County Clerk's deputies, not exceeding six in number, $1,200 per annum each, in the discretion of the Board of Supervisors." This last sentence is not very aptly expressed. But we think there can be no reasonable doubt of its meaning. The limitation upon the amount of the salary to these Clerks is absolute—it cannot exceed the amount prescribed; the only *discretion* is as to the number of the Clerks and the salary below the maximum; that is, the Board · may, in their discretion, prescribe a number less than six, or pay a salary less or equal to $1,200, but cannot exceed the number or the sum. Upon any other construction, the power of the Supervisors would be subject to no limitation at all, and the prescribing of the number and the salaries would be a senseless provision. Effect must be given to all the words of the section, and this is done by restraining the exercise of the discretion given within the limits indicated.

This act is an enabling statute, creating a Board with special powers and jurisdiction, and the Board has only the power shown to be conferred by the act. The case of the *People ex rel.* v. *Lawrence* (6 Hill, 244) is in point. In that case, the Supervisors audited an account for expenses incurred by one of the Board in defending against a criminal

prosecution for some offense charged upon him in his official character. Judge Bronson said: "If the relator has a legal right to the money which he claims, there is some reason for saying that his remedy was by action, and not by the writ of *mandamus*. (*Boyce* v. *Russell*, 2 Cowen, 444; *Ex parte Lynch*, 2 Hill, 45 ; Id. 46, note ; *Ex parte The Fireman's Insurance Company*, ante, 243.) But it is not necessary to decide that question, for he has no title to the money. Although the fact does not appear in the paper, it was said, and I shall assume, that the relator was acquitted of the charges brought against him in the Court of Common Pleas. Still, the expenses of his defense have not been made a charge upon the county, and the Board of Supervisors had no authority to allow the account, or any part of it. They have only such powers as have been conferred upon them by the Legislature, and there is no statute which gives any color for saying that they could indemnify the relator against the expense of his defense. (1 R. S. 366, sec. 4; Id. 385, sec. 3 ; Stat. 1838, 314, sec. 1.) It is not unlike the case of a party indicted for a crime, and acquitted on the trial. He gets no indemnity from the public treasury. And whatever appearance of justice there may be in charging the expenses of the accused upon the county, it is enough for us to say that this consideration addresses itself exclusively to the Legislature.

"If this had been a case where the Supervisors had authority to allow the claim, I agree that it would have been the duty of the Treasurer to pay, without inquiring whether the account was allowed upon insufficient evidence, or at too large an amount. But here, the Supervisors had no jurisdiction over the subject matter, and that fact appeared upon the face of the account which was presented for payment. Their act was a mere nullity, and it was the duty of the Treasurer to withhold payment."

We think, therefore, that the act did not warrant the Supervisors in making this appointment of Assistant Clerk, or in raising the salaries.

We quite agree with the counsel for respondent, that the salary allowed is inadequate, and that the policy of the State is not to withhold from competent officers—as these are represented to be—adequate remuneration for their services ; but this consideration is for the Legislature. We have no power to remedy this hardship, nor have the Supervisors.

Judgment reversed and cause remanded.

COPE, J.—I concur in the judgment of reversal, and in most of the views expressed in the opinion of Mr. Justice BALDWIN. The powers of the Board of Supervisors are derived exclusively from the statute, and the construction of this statute was necessarily involved in the proceedings complained of in this case. To that extent, these proceedings were judicial in their nature, and are therefore subject to review upon *certiorari* as the only remedy provided by law.

FIELD, C. J.—I agree with Mr. Justice BALDWIN in the construction of the statute, but differ from him as to the character of the ordinance under consideration. I regard the ordinance as a mere legislative act, involving in its passage no exercise of "judicial functions," as those terms are used in section four hundred and fifty-six of the Practice Act. I therefore dissent from the judgment of reversal.