RAWSON, appellant, v. VAN RIPER.

*School districts — alteration of — school tax — Costs*

A county school commissioner desiring to make an alteration in school districts
Nos. 5 and 7 in town of T., and No. 13 in towns of T. and B., made an order
accordingly, with the consent of the trustees of districts 7 and 13, but with-
out the consent of the trustee of district No. 5, to take effect immediately as to
districts 7 and 13, but not for four months as to No. 5. Fourteen days after-
ward another order was made, reciting that, "at request of the trustee of
No. 5," the supervisor and town clerk of town of T. met the school commis-
sioner to consider the propriety of making the proposed alterations, and after
hearing both parties ordered that such alterations be made. The supervisor
and town clerk of the town of B., and the trustees of Nos. 7 and 13 were not
notified, and did not attend. The trustee of No. 5 did not have a week's
notice, but he attended. The alteration, if valid, transferred plaintiffs from
No. 5 to No. 13. In an action by them against a trustee of No. 13, elected
subsequent to the alteration, to recover a tax assessed against them as resi-
dents of No. 13.

*Held,* that the orders, if irregular, could not be impeached in a collateral action
like this.

Proof of bad faith held to be insufficient to charge a school officer with costs
under Laws 1864, ch. 555, tit. 13, § 6.

The statute, requiring a school trustee to make an assessment within thirty
days after the tax is voted, is directory, and an assessment may be legally
made after the expiration of that period.

APPEAL from a judgment of the Tioga county court, reversing
a judgment in favor of plaintiff, rendered by a justice of the peace.
The opinion states the case.

*Davis & Easton,* for appellant.

*Charles E. Parker,* for respondent.

P. POTTER, J. In May, 1871, the county school commissioner
attempted to make, and in form did make, an alteration in districts
5 and 7 in the town of Tioga, and in district No. 13 in the towns of
Tioga and Barton; and the principal question in the case is, whether
he made a legal alteration, so that the plaintiff (Guiles) thereby be-
came a taxable inhabitant in said district 13.

Some of the facts, as they come up to us, are not quite clearly

stated; but it appears clearly enough that, before the attempted alteration, Guiles, the plaintiff, was within the limits of district No. 5, and that the alteration, if made, brought him within district No. 13, for and on account of which the tax was collected.

It may be necessary to cite so much of the statutes of 1864 (chap. 555) and 1865, as amended in 1867 (chap. 406) (which are in force), as affects this question.

Sess. L. 1864, p. 1237. By title vi, § 1, sub. 4, it is made the duty of the school commissioner "to deliver in writing to the town clerk the description and number of each district lying in whole or in part in his town, together with all notices, consents and proceedings relating to the formation or alteration thereof, immediately after such formation or alteration.

" § 2. With the written consent of the trustees of all the districts to be affected thereby he (the commissioner) may, by order, alter any school district within his jurisdiction, and fix by said order a day when the alteration shall take effect.

" § 3. If the trustees of any such district refuse to consent, he may make and file with the town clerk his order making the alteration, but reciting the refusal, and directing that the order shall not take effect as to the dissenting district or districts until a day therein to be named, and not less than three months after the notice in the next section mentioned.

By § 4, he must within ten days after making and filing such order give at least a week's notice in writing to one or more of the assenting and dissenting trustees of any district or districts to be affected by the proposed alteration; that at a specified time, and at a place named within the town in which either of the districts to be affected lie, he will hear their objections to the alteration. The trustees of any district to be affected by such order may request the supervisor and town clerk of the town or towns within which such district or districts shall wholly or partly lie, to be associated with the commissioner at the time and place mentioned in the notice. The commissioner, with the supervisor and town clerk, if they shall attend and act, shall hear and decide the matter.

" Such decision must either confirm or vacate the order of the commissioner, and must be filed with and recorded with the town clerk of the town or towns in which the district or districts to be affected shall lie."

The school commissioner, on the 4th of May, 1871, made an order,

which, if valid, transferred for the purposes of taxation both the property of the defendant and the plaintiff, Guiles, from district No. 5 to district No. 13. The consent to this alteration by the trustee in district 13 was supported by a vote of the district and the commissioner set forth appended to this order, a recital, that the trustee of district No. 7 had also given his consent, and that the order as to districts No. 7 and 13 would take effect immediately; and he also stated that the sole trustee of district No. 5 having refused to consent, the order, so far as district No. 5 was concerned, would not take effect until the 1st day of September, 1871.

It is proper to say that paper D, referred to in the case, which it would seem was the consent of trustee of district No. 7, is not returned. We cannot, therefore, see that there is any error in the statement as to this. There is evidence, it is true, that notice was given to the trustee signing it; that it was revoked, which implies that a consent had been given. We are not able to see that it was revoked or was a revocable instrument. The evidence in relation to its revocation, therefore, must be disregarded here. We must assume that this county officer correctly performed his public duty so far as districts No. 13 and 7 were concerned, on the 4th of May, 1871, *Williams* v. *Larkins*, 3 Denio, 114, but as district 5 did not give its consent as to this district the statute required further action on the part of the county commissioner. On the 18th of May, 1871, another order was made, dated at district 13 of Barton and Tioga, reciting that at the request of J. Johnson, trustee of school district No. 5, the undersigned supervisor and town clerk of Tioga (the supervisor and town clerk of Barton not having been notified) met the school commissioner of Tioga county at the time and place named, to take into consideration the propriety of altering school districts Nos. 5, 7 and 13, " in accordance with an order this day made by the commissioner, which order accompanies this report. After careful hearing of both parties we acquiesce in the change made, and think it right and proper and just." This was signed by the said supervisor and town clerk, to which was appended the following;

" It is understood by the undersigned that the school-house of district No. 13 is to be located within forty rods of Geo. Sager's house, which stands near Mr. Lambert's, in district No. 13."

This was signed by the county commissioner and the same supervisor and town clerk. The important question to be considered is, whether these two orders of May 4th and 18th, 1871, or either of

them, did have the effect to alter the three districts, or districts Nos. 7 and 13. According to the lines specified in that of May 4th, it can hardly be doubted that the errors pointed out are such as were sufficient to reverse the action of the town commissioner, if a direct proceeding for that purpose had been instituted to that end.

The question here is, can those errors be reviewed by this court, or could they have been reviewed in the justice's court? The act of the town commissioner was in its nature judicial. At all events, his order of the 4th of May, 1871, was an order which he had authority and jurisdiction to make (see statutes above cited); and this order was valid on its face, and, being so, was controlling upon all subordinate officers and persons upon whom it was to operate, until it was legally vacated and set aside. This has been so held ever since the case of *Bennett* v. *Burch*, 1 Denio, 141; *Williams* v. *Larkins*, 3 id. 114, approved in *Buel* v. *Trustees of Lockport*, 8 N. Y. 58.

The county commissioner having jurisdiction of the subject-matter, and having made a legal order binding at least upon districts 7 and 13, and taking effect immediately upon those two districts by the provisions of the statute, and according to its constitution, as held in *Williams* v. *Larkins, supra*, and it never having been reversed or vacated as to district No. 5, it would seem, upon the authority of the cases cited above, that the defendant, being chosen a trustee of district No. 13, under an organization of that district under the order of May 4th, 1871, could justify his act under that order alone. No question is raised that the county commissioner had not jurisdiction of the subject-matter of the order. District No. 13 was organized under that order, and under that organization the defendant was elected a trustee of No. 13.

At the time of his election as such trustee, the said order by its terms had taken effect as to all the districts, 13, 7 and 5. The act in question is quite defective, especially in its omission to declare what the effect of the first order is, in case of an omission of the county commissioner to give notice required by the fourth section of the act to the trustees of the districts affected, of the time when he will hear their objections to the alteration.

The statute clearly contemplates further action when the trustees of one district refuse consent to the alteration. The commissioner did take subsequent action. He gave notice to the trustee of district No. 5, who had refused his consent, of a day of hearing objec-

tions, but this notice was not of the required length of time. So too there was a hearing by the commissioner upon the day appointed and the trustee of the non-consenting district appeared. The meeting was held at his request. The supervisor and town clerk of Tioga, in which district 5 was situated, appeared and acted with the commissioner. The supervisor and town clerk of Barton were not notified and did not appear. Other illegalities in this further proceeding clearly appear, among which is the ratification of an order claimed to be that of the 4th of May, 1871, stated therein, however, to be an order made on "this day," the 18th, "and which accompanies this report," but as no such order does accompany the order of the 18th of May, or otherwise appears, and as they met to act only upon the order of May 4th, it is fair to infer the action of the 18th must be regarded as a confirmation of the order of the 4th, as they had no power to act upon any thing else.

Now it must be conceded that the plaintiff never gave his consent to the alteration which transferred him from the 5th to the 13th district, and that there is no evidence of waiver of his rights to remain an inhabitant of the 5th district, or of his assent to the change.

It is also quite clear that the trustee of district 5 did not give his consent to the change, he did not receive a notice of the time to make objections one week before the day appointed. He could not affect the plaintiff's legal rights by any consent to shorten the time. The town of Barton and district No. 13, which was affected by the alteration, did not have notice given to the supervisor and town clerk to attend to make objections, nor had the trustee of district 13, an assenting district, notice of such meeting. The trustees had a legal right to such notice. How otherwise could they request their town clerk and supervisor to unite in hearing objections to the change? It is quite clear to my mind that several errors were committed in this proceeding before and at the meeting of the 18th of May, 1871. The question then is, were these such jurisdictional errors as can be reviewed and taken advantage of in a justice's court collaterally? That the proceeding would probably have been reversed by direct action, perhaps, may not be denied, but no such action appears to have been taken. The commissioner, as we have already said, had jurisdiction of the subject-matter, when he made his first order. Did he lose it by the errors committed between that time and the time of making the second order?

I think his jurisdiction of the subject-matter continued, though he greatly erred in its exercise. His act was judicial and cannot, I think, be reversed collaterally or treated as a nullity. The practice provides other methods for correcting such errors, and the party that omits to take the appropriate remedy within the prescribed period is regarded as having acquiesced in the proceeding. Though voidable, it is not void. The language of the statute directing the proceeding subsequent to the first order does not appear to be so mandatory in character as to be construed to be conditions precedent. It seems to be directory and not jurisdictional. This distinction between the effects of statutes that are directory and such as are mandatory or jurisdictional, is well recognized in various cases. *Doughty* v. *Hope*, 9 Denio, 252; *Elmendorf* v. *Mayor of New York*, 25 Wend. 693; *Marchant* v. *Langworthy*, 6 Hill, 646; *Jackson* v. *Young*, 5 Cow. 269; *Striker* v. *Kelly*, 7 Hill, 24; *People* v. *Cook*, 8 N. Y. 89.

A statute directing the mode of proceeding by public officers is to be deemed directory, and a precise compliance is not to be deemed essential to the validity of the proceedings, unless so declared by statute. See cases cited in note 29, Dwarris on Statutes, 222, Amer. ed. This note is understood to apply to proceedings subsequent to the acquiring of jurisdiction of the subject-matter.

Several other errors are presented as objections, such as the omission to file the order and other papers with the town clerk. But these are more technical than those noticed, and they fall within the same rule of being directory requirements. If then we are right, that the order of the county commissioner in changing the school districts was valid while remaining unreversed and binding on the inhabitants of the school district as so changed, the defendant was at least by an election an officer *de facto* of district No. 13, invested with all the powers and bound to the performance of all the duties of trustee of that district. A tax had been voted by the district prior to his election. After his election he was the only person authorized to carry that vote into execution, by the assessment of the tax upon all the taxable inhabitants of the district of which he was sole trustee, and to make out the tax-list and warrant for its collection against all such inhabitants. The plaintiff was then such an inhabitant. Laws of 1864, chap. 555, p. 1252, § 49, subd. 3. This was a plain statute duty and requirement.

True, it is objected that the statute requires him to perform this

duty within thirty days of the time of voting the tax. Such is the statute, but it was held in *Thomas* v. *Clapp*, 20 Barb. 165, that this provision was merely directory, it being for the public benefit, and that such an act can be legally done after the time specified in the statute has elapsed. See, also, *Gale* v. *Mead*, 2 Denio, 160. The act of the defendant in assessing the property in question, upon the hypothesis that the defendant was a resident of district 13, was a judicial act (see *Barhyte* v. *Shepherd*, 35 N. Y. 251), and, of course, as we have held above, could not be reviewed by the justice or held to be without authority. The justice must have assumed the converse of this proposition or must have held that there had been no legal change of these school districts in these respects. If he so held he was in error. If the orders of the county commissioners were valid until reversed, the plaintiffs by law were transferred into district 13, and their property was assessable therein. There is no claim or pretense that there was any injustice as to valuation of property or inequality of taxation or rate of assessment. The warrant was in due form of law and was legally executed by the officer. The question of the defendant's liability is strictly a question of law.

In the view I have taken of the law, the defendant, in making his assessment and in issuing his tax warrant, was performing a duty required by law. I have found nothing in the evidence to show that he did not act in good faith. The contrary is claimed upon the evidence. The only evidence of bad faith is the testimony of one of the plaintiffs, who states that he told the defendant that the proceedings in regard to the alteration were illegal, and that he, the plaintiff, meant to sift the matter and defend his rights, and he also told the defendant he would have trouble if he accepted the office of trustee.

This opinion and notice of the plaintiff, it seems, were given after district No. 13 was organized under the new order and after the defendant had joined the new organization and been elected a trustee. This seems to be the evidence which made it appear to the justice that the defendant did not act in good faith, and upon which he adjudged costs against the defendant. This is an erroneous conclusion. This notice and threat from a dissatisfied party could only be the expression of an opinion as to his own rights and of the law as he supposed it to be. The defendant had an equal right to exercise his opinion upon the law of the case and to act in accordance with it. He was in a condition where he must act one

way or the other, and it is no evidence of bad faith that he acted in accordance with the dictates of his own judgment, especially as his judgment seems to have been according to law and duty. The statute on this subject (Laws of 1864, chap. 555, tit. 13, § 6) provides that in such actions against school officers for any act performed under color of their offices which might be the subject of appeal to the superintendent, no costs shall be allowed to the plaintiff in cases where the court shall certify that it appeared on the trial that the defendant acted in good faith.

This case came clearly within the provisions of that statute.

Had the justice been right upon the law of the case otherwise, he erred in relation to the costs. The result is that the judgment of the county court must be affirmed with costs.

*Judgment affirmed with costs.*