People ex rel. Kilmer v. Cheritree.

---

PEOPLE *ex rel.* KILMER v. CHERITREE.

6 T&C473
79 AD ²188
e 79 AD 195

*Certiorari — invalidity of statute and irregularity of action under, when should not be determined by. Constitutional law — Laws of 1870, chap.* 623, *and* 1872, *chaps.* 293 *and* 500, *valid. Statutory construction — laws relating to Union avenue, Saratoga Springs. Assessment.*

Where a legislative act for the laying out of a highway and the imposition of taxes or assessments therefor is unconstitutional, or commissioners appointed to carry out the act do not follow the authority given them, those liable to taxation have abundant protection at law without resort to the writ of certiorari, and the allowance of such writ in such case should be discountenanced.

By Laws 1870, chap. 623, amended by Laws 1872, chaps. 293 and 500, provision is made for the laying out of Union avenue in the village of Saratoga Springs one hundred feet wide, and the manner of assessment, and the district in which it shall be imposed, is defined, and provision made for the appointment of special commissioners to carry out the requirements of the act. *Held,* that the acts are valid, and not in violation of article 10, section 2 of the constitution.

By the thirteenth section of the act of 1870, the commissioners are to make their report " stating the quantity of land taken for such avenue, and its value, with the names of the persons and the amount of damages awarded, and also a general description of all lands and property assessed for benefits, with the names of the owners, and the amount assessed against each." *Held*, that the omission of descriptions of the particular parcels of land assessed did not render the report fatally defective. *Held*, also, that an assessment of the amounts against the individuals owning the lands, instead of against the lands, was proper.

*People ex rel. Kilmer* v. *Cheritree*, 4 N. Y. Sup. 290, doubted.

CERTIORARI upon the relation of Chauncey Kilmer and others to A. J. Cheritree and others, commissioners for appraisal of damages, etc., upon opening and laying out Union avenue in Saratoga Springs, and to the town clerk of the town of Saratoga Springs, for the purpose of reviewing such proceedings.

. The proceedings were had under the provisions of Laws 1870, chapter 623, as amended by Laws 1872, chapters 293 and 500, and Laws 1874, chapter 200. The first-mentioned law is entitled " An act to provide for laying out and improving roads and avenues in the village and town of Saratoga Springs." The act provides that the work shall be under the charge of commissioners of construction therein named, who shall have power to take possession of such lands as may be necessary for the avenue, which it is provided shall be one hundred feet wide Provision is made for the appointment of commissioners of appraisal by some court of record upon application of the commissioners of construction, which commissioners of appraisal are authorized " to appraise all the damages and to assess all the resulting benefits on all the avenues to be opened, altered or widened under the provisions of this act." The act also contains provisions directing the method of appraisal and assessment, and regulating such other proceedings as may be necessary in carrying out its purposes. Under the authority conferred by this act and the amendments in 1872, Union avenue was widened and extended, commissioners of appraisal were appointed who assessed upon those owning land benefited by such improvement such sums as in their judgment were proper.

By the act of 1874, which is entitled "An act to amend an act entitled 'An act to provide for laying out and improving roads and avenues in the village and town of Saratoga Springs,' passed May 5, 1870," the proceedings of the commissioners of appraisal were ratified and confirmed, and the benefits assessed by said commis-

sioners were directed to be collected in all respects as if the proceedings of said commissioners were in all respects regular.

Upon the return to the certiorari an argument was had before the general term and the court dismissed the writ. The decision upon that occasion is reported, 4 N. Y. Sup. 289. This is a re-argument.

It was claimed by the relators, 1st. That the original act of 1870, and all amendatory acts, providing for the laying out and widening streets and avenues in Saratoga Springs, *and appointing special commissioners of highways* to carry out their provisions, are unconstitutional and void, and that all proceedings under them are also void; and, 2d. If the acts are valid, that the commissioners of appraisal have not conformed to their requirements in making their appraisal and assessment, and hence that the taxes thereby imposed are illegal, and therefore void. Other facts will be found in the opinion and in the report of the case upon the former argument.

*A. Pond*, for relators. The act of 1870 and the amendatory acts are in conflict with the constitution, article 10, section 2. *People* v. *Crooks*, 53 N. Y. 648; *People* v. *McKinney*, 52 id. 374; *People* v. *Bull*, 46 id. 57; *People* v. *Raymond*, 37 id. 428; *Devoy* v. *Mayor*, 36 id. 449; *People* v. *Pinckney*, 32 id. 382; *People* v. *Albertson*, 55 id. 50; *People* v. *Acton*, 48 Barb. 524; *People* v. *Blake*, 49 id. 9; *Schuster* v. *Met. Board of Health*, id. 451; *Warren* v. *People*, 2 Denio, 272. The commissioners of appraisal did not conform to the provisions of the act of 1870, and their action is void. *Westfall* v. *Preston*, 49 N. Y. 349; *Sharp* v. *Speir*, 4 Hill, 76; *Whitney* v. *Thomas*, 23 N. Y. 281. The act of 1874 is ineffectual to render the proceedings of the commissioners of appraisal valid, and did not effect that purpose. The act is invalid under Constitution, art. 3, § 16, being local and the subject of confirming the proceedings not being mentioned in the title (*People* v. *Comm'rs*, 53 Barb. 70; *Hopkins* v. *Mason*, 61 id. 470, 474; *People* v. *Hills*, 35 N. Y. 449; *People* v. *O'Brien*, 38 id. 193; *Huber* v. *People*, 49 id. 132; *Gaskin* v. *Meek*, 42 id. 186), and further because the legislature had no power to render valid void proceedings. *Hopkins* v. *Mason*, 61 Barb. 469; *Town of Duanesburgh* v. *Jenkins*, 46 id. 295, 312; *Ireland* v. *City of Rochester*, 51 id. 415, 431, *Doughty* v. *Hope*, 3 Den. 595, 599; *Matter of Turfler*, 44 Barb. 53.

*P. H. Cowen* and *L. B. Pike*, for respondents.

Present — LEARNED, P. J., BOARDMAN and JAMES, JJ.

BOARDMAN, J. The relators claim that the proceedings by which they have been assessed for supposed benefits to their several pieces of property, arising from the opening of Union avenue in the village of Saratoga Springs, are void, and should be reversed and set aside for the following reasons : First : The original act of 1870 (Laws 1870, chap. 623) is unconstitutional in that it appoints persons to discharge the duties of commissioners of highways for said village in violation of section 2, article 10 of the constitution of this State. Second : That the acts of the defendants, commissioners of appraisal under the law of 1870, in making their assessments are not in conformity thereto, and are consequently void, and hence the taxes imposed upon the relators are illegal and should be set aside. Third : That the acts of 1870, and the acts amendatory thereof are void for vagueness and inconsistency. Fourth : That the act of 1874 is ineffectual to render valid the prior void acts of the legislature. Fifth : That these proceedings for review were begun before the passage of the act of 1874, and are therefore not to be affected by it.

And first it is proper to say, that if these propositions are true, if the legislative acts were unconstitutional and invalid, or if the commissioners have not followed the authority given them by these acts so as to impose legal and valid taxes or assessments, the relators had abundant protection at law without resort to the writ of certiorari. The allowance of the writ on behalf of two or three, out of a large number of persons interested in like manner in assessments and taxes for local improvements or the public benefit, should be discountenanced, especially where adequate relief is afforded in proceedings at law. *Matter of Mt. Morris Square*, 2 Hill, 16; *Elmendorf* v. *Mayor of N. Y.*, 25 Wend. 693; *Case of Fifty-first Street*, 3 Abb. 232; *Matter of Eighteenth Street*, 17 id. 324.

First. Is the law of 1870 unconstitutional? The commissioners of highways of any town have the right to open highways in the manner prescribed by law. The legislature has the same right, but in a far more unrestricted form. The legislature is the fountain of all power, subject only to the constitution. The legislature may therefore by its own inherent power locate a highway and provide for paying the damages and opening and working it, without the instrumentality of highway commissioners. Const., art. 1, §§ 7,

11; *Clark* v. *Miller*, 54 N. Y. 528; *People ex rel. McLean* v. *Flagg*, 46 id. 401. It may also provide for the apportionment of the expenses and for the manner of collection. *Litchfield* v. *Vernon*, 41 N. Y. 123. This, I understand, has been done as to Union avenue in the village of Saratoga Springs by the acts of 1870 and 1872.

By section 2, Laws of 1870, chap. 623, it is enacted that Union avenue shall be one hundred feet wide. By the acts of 1872, chaps. 293 and 500, Union avenue is located, its width is established at one hundred feet, the manner of widening to that extent fixed and prescribed, and how compensation shall be made and benefits assessed. The district within which real estate may be assessed for benefits is defined by metes and bounds. So far, then, as Union avenue is provided for by said acts, I think it cannot be justly claimed that they are unconstitutional. The legislature has described and laid out the street, and ordered it opened, and provided ways and means therefor. Even if those acts could have been done by the commissioners of highways of the village they could equally have been done by the sovereign power of the State, as may be seen by the cases cited above.

But it is not to be conceded that the commissioners of highways could have laid out this street of the width and in the manner provided by the legislature. In all these respects it was in excess of their power under the statutes.

It is not necessary to consider whether all the powers given to the special commissioners by these acts over the streets of Saratoga Springs were unconstitutional. It is sufficient if they have acted within constitutional and legal limits in the matters before us for review. There is nothing in the act or purpose indicating an attempt to evade a constitutional right. It was a case where the usual authorities could not accomplish the purpose. In these respects the case is distinguished from *People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50.

For the reasons stated I think the acts of 1870 and 1872, laying out Union avenue, and providing for the opening and working of it, and for defraying the costs thereof, was a good and valid law, and did not infringe upon section 2 of article 10 of the constitution.

Second. A much more formidable difficulty arises from the manner in which the authority conferred upon the commissioners of appraisal was exercised by them. The difficulty exists in some

degree by the obscurity of the return as to the conduct of the commissioners. Undoubtedly the statute must be substantially complied with, or the tax will be invalid. *Westfall* v. *Preston*, 49 N. Y. 349. What is a substantial compliance depends upon the construction to be given to the acts of 1870 and 1872. When this case was last before this court (4 N. Y. Sup. 290), Mr. Justice MILLER thought that the report of appraisals was fatally defective by reason of the omission of descriptions of the particular parcels of land assessed. But as the return is made, and upon the papers presented, I am inclined to doubt his conclusion.

By the thirteenth section of the act of 1870, the commissioners are to make their report "stating the quantity of land taken for such avenue and its value, with the names of the persons and the amount of damages awarded, and also a general description of all lands and property assessed for benefits, with the names of the owners and the amount assessed against each. It must be recollected the first report is lost, as appears by the return. The commissioners, however, say that such first report showed a strict compliance with the law. By the second or final report such assessments appear to be in accordance with the act, if the maps returned with the papers constituted a part thereof. Whether they or either of them were part of said second report, is not clear from the return, though I think it should be assumed that both were. They are the result of surveys made for this specific object, and were used for the purpose of appraisal and equalization. Assuming that to be true, the report containing Schedules A and B, with the two maps, contains a remarkably full and explicit description of the property taken for the avenue, its value, the awards to each owner for compensation, the names of the owners; also, not only a "general," but a particular, "description" of each lot of land or property assessed for benefits, with the names of the owners and the amounts assessed against each on account of such property. Upon such assumption there was a complete compliance with the law in the assessment and second report.

I think this conclusion would be equally justified if either map accompanied the report, but if no map was filed with the reports corresponding with those presented to the court, the assessment and report did not comply with the law. I have said that the maps will be presumed to have been integral parts of the proceedings and reports, because, otherwise, they have no business here and should

have been stricken out of the return. The return to a common-law certiorari should bring up the record of proceedings of the inferior tribunal, and nothing more. It should affirmatively appear therefrom that such proceedings are void. If it is left doubtful or uncertain whether the tribunal has acquired and retained jurisdiction and pursued it properly, and any fair construction will sustain their action, it will be sustained.

Third. It is urged by the relators that the commissioners of appraisal have assessed the amounts against the individuals, instead of the lands, and that such error is fatal. If my previous conclusion be correct, there is no difficulty in sustaining an assessment against the land owners instead of the land. By the act of 1870, chapter 623, section 13, the commissioners are to ascertain "the *names of the owners* and the amount assessed against *each.*" Section 16 provides that the town clerk shall transmit to the board of supervisors "the names of all persons assessed for benefits under this act, and the amount assessed to *each.*"

"The board of supervisors shall also cause the names of all persons returned by the town clerk of said town as assessed for benefits, with the amount assessed against *each*, to be inserted in the assessment roll of said town, the amount so assessed to be levied and collected as other town taxes and paid," etc. By the acts of 1872, chaps. 293 and 500, section 1 of the original act is amended, but the remainder of the act of 1870 remains the same and is applicable to such amended first section. In the section as amended, it is provided that compensation shall be made for land taken, and such compensation and the resulting benefits shall be "ascertained and assessed in the manner provided in said act," etc.

These provisions leave no doubt in my mind that the legislature intended the tax should be personal. It follows, necessarily, from the fact that it is to be levied and collected as other town taxes. It becomes a tax against the person on account or by reason of the property owned by such person.

In the view I have taken, it is unnecessary to examine whether such a tax could have been ascertained and assessed against these relators legally, without the aid and existence of these maps as a necessary part of their proceedings and report.

These considerations lead to an affirmance of the proceedings and assessments, without reference to the act of 1874, by which the proceedings of the commissioners of construction and the commis-

sioners of appraisal are legalized. Such act is an implied expression of legislative opinion that some of those acts needed legalizing, and that they were in fact invalid by reason of some defect of jurisdiction or insufficiency in the exercise thereof. In my deference to the wisdom of the legislature, I began the investigation of this case in that belief. ˙A careful and somewhat laborious examination has led me to a different result, and I now think such proceedings can fairly be sustained upon the merits, without a resort to the act of 1874.

I should, however, do injustice to my own feelings if I did not deprecate and condemn this kind of special legislation for local purposes. It is to be hoped that such legislative interference with municipal corporations may henceforth cease. Laws of this character are usually urged by no public influence or interest, nor enacted by any proper intelligence or knowledge by the legislature of the wants of the community to be affected.

The proceedings and assessments brought before us by this writ should be affirmed, with costs against the relators personally.

<em>Ordered accordingly.</em>