## COMRS. OF MASON AND TAZEWELL SPECIAL DRAINAGE DISTRICT

*v.*

### WILLIAM L. GRIFFIN *et al.*

*Filed at Springfield November 1, 1890.*

1. JURISDICTION—*of the person—appearance—waiver.* If there be no sufficient service of process on a petition for a common law writ of certiorari, the appearance of the defendant without making objection is a waiver of all defects of jurisdiction of his person, and the objection comes too late on motion in arrest of judgment.

2. SAME—*defendant sued out of his own county—matter of jurisdiction to be pleaded.* Section 2 of the Practice act, which makes it unlawful for any plaintiff in a transitory action to sue any defendant out of the county where the latter resides or may be found, gives the defendant a privilege, merely, of being sued in the county where he resides or may be found, to avail of which he must do so in apt time, by plea to the jurisdiction, or he will be deemed to have waived it.

3. SAME—*drainage district—residence—for the purposes of suit.* A drainage or *quasi* municipal corporation having within its boundaries territory in two counties, must be deemed to be existing and located, for all purposes of jurisdiction, in every part of its territory; and the same is true of its corporate authorities, so that an action, even if local, may be brought against the corporation in either county.

4. CERTIORARI—*as a common law remedy—in force in this State.* The common law remedy of certiorari is adopted and in force in this State, and any court exercising general common law jurisdiction has, unless expressly forbidden to do so by statute, an inherent authority to issue the writ.

5. SAME—*not a writ of right.* The common law writ of certiorari is not a writ of right, but issues only upon proper application and proper cause shown.

6. SAME—*when the writ may issue.* The writ of certiorari may be awarded to all inferior tribunals and jurisdictions, where it appears that they have exceeded the limits of their jurisdictions, or in cases where they have proceeded illegally, and no appeal is allowed, and no other mode is provided for reviewing the proceedings.

7. SAME—*purpose of the writ—of the trial and judgment.* The purpose of the writ is to have the entire record of the inferior tribunal brought before the court in which the proceedings are sought to be reviewed, to determine whether the former had jurisdiction, or had exceeded its jurisdiction, or had failed to proceed according to the

essential requirements of the law. The trial is solely by inspection of the record, and if that shows the want of jurisdiction, or illegality, the proper judgment is that the record be quashed.

8. SAME—*to what inferior tribunals the writ may issue.* The general rule seems to be, that this writ lies only to inferior tribunals and officers exercising judicial functions, and the act to be reviewed must be judicial in its nature, and not ministerial or legislative. But it is not essential that the proceedings shall be strictly and technically "judicial," in the sense in which that word is used when applied to courts of justice. It is sufficient if they are *quasi* judicial.

9. CORPORATIONS — *legality of organization — exercise of assumed powers—by what remedies to be questioned—former decisions.* In several cases in this court there are expressions from which it might be inferred that a *quo warranto* is the only mode of testing the legality of the formation of an existing *de facto* corporation; but that question did not arise and was not decided in them.

10. In *Lees* v. *Drainage Commissioners,* 125 Ill. 47, it is held that the writ of certiorari does not lie to determine whether a corporation has a legal existence, and that the validity of its organization can be questioned only by *quo warranto.* In that case, the corporate existence itself of a *quasi* municipal body was sought to be challenged by certiorari, while here such existence is fully admitted, and the only thing sought to be done is to call in question the validity of an order of a municipal body admitted to be a corporation both *de facto* and *de jure,* extending the boundaries of the district.

11. No good reason is perceived why a municipal corporation which has exceeded its jurisdiction and has proceeded illegally, may not be proceeded against by *quo warranto,* by *scire facias,* or by the common law writ of certiorari, indifferently, as the one or the other may afford a proper and sufficient remedy.

12. DRAINAGE LAW—*enlarging drainage district—conditions to the exercise of the power.* Before the commissioners of a drainage district are authorized by law to make an order annexing other lands thereto, they must determine, from the evidence, whether the requisite number of adult owners have signed the petition for annexation, and whether the signers are the owners of the requisite proportions of the lands embraced within the district, and whether the lands sought to be annexed are involved in the same system of drainage, and require for outlets the drains of the district.

13. SAME—*notice—of enlargement of drainage district.* Section 42 of the Drainage act of 1885, vesting the commissioners of a drainage district with power to enlarge the boundaries of their district, fails to prescribe the mode of procedure, or the notice to be given to the owners of the lands sought to be annexed. The court holds, however, that

the same notice required in the formation of an original district must be given of the proceeding for such enlargement, and that without such notice the order of annexation is void, and will be quashed on certiorari.

14. Same—*defective notice—who may avail of it—in the case of several land owners.* Although a land owner may waive a want of sufficient notice in a proceeding to annex additional territory to an already existing drainage district, by appearing at the time and place appointed for hearing objections, so far as he is concerned, yet he has the right to have the annexation valid and binding on all the land owners or on none, and therefore he may take advantage of the defective notice, unless all persons affected by the order appeared, and thereby conferred jurisdiction. In such case, the commissioners must acquire jurisdiction of all the land owners, and of all the lands within the territory proposed to be annexed, before they may lawfully act. If the order of annexation is void as to some of the lands and owners, it is so *in toto.*

Appeal from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Tazewell county; the Hon. N. W. Green, Judge, presiding.

Messrs. Wallace & Prettyman, for the appellants:

A corporation organized, and a defendant, under a statute, must be sued in the county where its principal office is kept, and where the cause of action arose. *Parke* v. *Insurance Co.* 44 Pa. St. 422; *Safford* v. *Insurance Co.* 88 Ill. 296; Rev. Stat. chap. 110, sec. 2.

If assessments exceed the benefits, the remedy is by appeal. *Commissioners* v. *Kelsey,* 120 Ill. 482; *Moore* v. *People,* 106 id. 377; *Mascall* v. *Drainage Comrs.* 122 id. 620.

Certiorari does not bring up evidence not in the record. *Railway Co.* v. *Whipple,* 22 Ill. 108; *Booth* v. *Barnes,* 1 Mich. 37; *Doolittle* v. *Railroad Co.* 14 Ill. 383; *Railroad Co.* v. *Fell,* 22 id. 336; *Donahue* v. *Will County,* 100 id. 102.

The appearance of the land owners gave the commissioners jurisdiction. *State* v. *Jersey City,* 12 Vroom, 493; *State* v. *Elizabeth,* 13 id. 58; *Huston* v. *Clark,* 112 Ill. 350; *Kedzie* v. *Park Comrs.* 114 id. 284.

Certiorari does not lie to test the organization of a drainage district. It can only be done by an information in the nature of a *quo warranto. Lees* v. *Drainage Comrs.* 125 Ill. 47; *Renwick* v. *Hall,* 84 id. 162; *Osborn* v. *People,* 103 id. 224; *Evans* v. *Lewis,* 121 id. 478; *Keigwin* v. *Drainage Comrs.* 115 id. 347; *Blake* v. *People,* 109 id. 504; *People ex rel.* v. *Newberry,* 87 id. 41; *Trumbo* v. *People,* 75 id. 561; *Baker* v. *Admr. of Backus,* 32 id. 79; *People ex rel.* v. *Board of Education,* 101 id. 308; *Hinze* v. *People,* 92 id. 406; *Samuels* v. *Drainage Comrs.* 125 id. 540.

There is no difference in the manner or way by which the legality of enlarging the boundaries of a district by annexing lands can be tested, and the organization of the district in the first instance.

The only object of a writ or notice is to bring the party before the court or tribunal, and if he voluntarily appears and submits himself to the jurisdiction, it matters not whether there is or is not any writ or notice, or whether the same is or is not void. *Wasson* v. *Cone,* 86 Ill. 46; *Huston* v. *Clark,* 112 id. 350; *Miles* v. *Goodwin,* 35 id. 53; *Baldwin* v. *Murphy,* 82 id. 485.

The record shows that every one of the appellees who sued out this writ of certiorari appeared before the commissioners, either in person or by their attorney, and were heard at the time the petition for the enlargement was presented and the proceeding had and the enlargement made, and having submitted themselves to the jurisdiction, (if such is the proper term to use,) they can not be heard to complain of want of notice.

Mr. JAMES H. SEDGWICK, for the appellees:

There are two classes of cases in which, according to the previous decisions of this court, a common law writ of certiorari will lie: First, whenever it is shown that the inferior court or jurisdiction has exceeded its jurisdiction; and second,

whenever it is shown that the inferior court or jurisdiction has proceeded illegally, and no appeal or writ of error will lie. *Hyslop* v. *Finch*, 99 Ill. 173.

The method of directly reviewing the proceedings of such inferior jurisdictions afforded by our law, where, as in this case, no appeal is allowed, is either by writ of error or certiorari at common law.

Whenever a new jurisdiction is created by act of parliament, and the court or judge that exercises this jurisdiction acts as a court of record, according to the course of the common law a writ of error. lies on their judgments. But if they act in a summary way, or in a new course different from the common law, a writ of error will not lie, but a certiorari. *Haines* v. *People*, 97 Ill. 166.

There is a wide difference between attacking the organization of a *quasi* municipal body, and in questioning orders made concerning or by it, that effect a change of its boundaries. While in the first case *quo warranto* is the only remedy, in the second case certiorari is proper. *Miller* v. *Trustees of Schools*, 88 Ill. 27.

The case of *Lees* v. *Drainage Comrs.* 125 Ill. 47, holds that certiorari will not lie to the commissioners on the order giving them existence as an artificial person, and the proceedings in the original formation of the district.

In *People* v. *Whitcomb*, 55 Ill. 172, it is held that *quo warranto* is not the proper remedy to test the right of a city to extend its boundaries; that such writ is generally employed to try the right of a person's claim to an office,—not whether his official acts should be confined to a particular locality.

In a proceeding by *quo warranto* under our statute, against these commissioners, in such a case as this, there could be no judgment of ouster or setting aside their non-jurisdictional order complained of,—only a fine and costs. This would not put our lands *in statu quo*. Rev. Stat. chap. 112, sec. 6.

This statute has not taken away the old common law right of the citizen to have such proceedings reviewed on certiorari.

If a statute gives a remedy in the affirmative, without a negative expressed or implied, for a matter which was actionable at common law, the party may proceed at common law, as well as upon the statute, for that does not take away the common law remedy. Sedgwick on Stat. and Const. Law, (2d ed.) p. 343, 100 n.

To issue the writ of certiorari at common law is a high prerogative of the court, that can not be taken away by implication,—only by express words. *Commonwealth* v. *Balph*, 111 Pa. 365; *People* v. *Williamson*, 13 Ill. 662.

The statutory remedy by *quo warranto* is a people's remedy for a public injury done the State in usurping franchises and powers not granted, and is not for the protection of private rights and the redress of private injuries, such as the putting of a general lien for past assessments, by a non-jurisdictional order, on the lands of the citizens. *People* v. *Railway Co.* 88 Ill. 538; *People* v. *Koerner*, 21 id. 65.

The remedy by *quo warranto* can only be resorted to at the discretion of the Attorney General, or the State's attorney of the proper county. Rev. Stat. chap. 112, sec. 1.

Confining the citizen to such a remedy for injuries to his private rights, is in violation of section 19, article 2, of our State constitution, and of section 1, article 14, of the United States constitution.

The point that certiorari will not lie in review of the order and proceedings complained of by us, was not made by appellants in the circuit court.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a common law writ of *certiorari*, brought to review certain proceedings of the commissioners of the Mason and Tazewell Special Drainage District. Said district was organ-

ized in the year 1882, under the provisions of the act entitled
"An Act to provide for the organization of drainage districts,
and to provide for the construction, maintenance and repair
of drains and ditches by special assessment on the property
benefited thereby," approved May 29, 1879, and originally
embraced 42,000 acres of land situate in several townships
in the counties of Tazewell and Mason. After said district
had been organized and had constructed its main and lateral
ditches and smaller drains, and had levied and in part col-
lected several assessments upon the lands of the district for
the construction thereof, and had also incurred a heavy in-
debtedness for which it had issued its bonds, it was claimed
that other lands adjoining the district at various points were
actually involved in the same system of drainage, and that the
owners of such lands depended upon and were, to some ex-
tent, availing themselves of the ditches and drains thus con-
structed. A petition was thereupon prepared and signed by
certain of the adult owners of land in the district, praying for
an enlargement of the boundaries of the district by annexing
thereto the several adjacent tracts of land situated as above
described. Said petition was presented to the commissioners
of the district on the 10th day of January, 1887, and the pro-
ceedings whereunder were had or attempted to be had in pur-
suance of the provisions of section 42, of the act of June 27,
1885, entitled "An Act to provide for drainage for agricultural
and sanitary purposes, and to repeal certain acts therein
named," said last named act being an amendatory revision
and consolidation of the act under which said district was
organized and the several acts amendatory thereof. Laws of
1885, p. 77. Said proceedings resulted in an order by said
commissioners enlarging the boundaries of said district in
accordance with the prayer of the petition. Various of the
owners of the lands thus annexed, presented to the Circuit
Court of Tazewell county their petition for a *certiorari*, alleg-
ing, among other things, that the proceedings by which the

boundaries of said district had been enlarged were irregular and without jurisdiction or lawful authority on the part of said commissioners, and praying that the record of said proceedings be brought before said court, and that said order of annexation to or extension of the boundaries of said special drainage district, and the entry thereof in the records of said district, be reversed, set aside and annulled. On said petition a writ of *certiorari* was duly issued and served, and thereupon said commissioners made return to said writ by certifying to said court the record of said proceedings. On inspection of said record, the court entered judgment quashing the same, and ordering that it be forever held for naught. Said judgment was affirmed by the Appellate Court, and an appeal has now been taken to this court.

It is urged by the appellants that the Circuit Court of Tazewell county had no jurisdiction. It is clear that no question as to its jurisdiction of the persons of the appellants can now be raised. Even if there had been no sufficient service of process, their appearance without objection was a waiver of all defects of jurisdiction over their persons, and it was too late to raise the objection for the first time, as it was raised in this case, on motion in arrest of judgment. But it is insisted that said court had no jurisdiction of the subject matter of the writ, such contention being based upon the fact that said drainage district, though comprising territory in both Tazewell and Mason counties, was organized by the County Court of Mason county, and kept its principal office and its records in that county. On this point counsel cite and seem to rely upon the provisions of the second section of the Practice Act, which makes it unlawful for any plaintiff in a transitory action, to sue any defendant out of the county where the latter resides or may be found. In view of the provisions of that section it seems to be immaterial whether said drainage district is deemed to be a resident of Mason county or not, since the statute, as has frequently been held by this court,

gives the defendant a privilege merely of being sued in the county where he resides or may be found, and that to avail himself of such privilege, he must do so in apt time by plea to the jurisdiction, or he will be deemed to have waived it. *Drake* v. *Drake*, 83 Ill. 526 ; *T., W. & W. Ry. Co.* v. *Williams*, 77 id. 354 ; *Wallace* v. *Cox*, 71 id. 548 ; *Humphrey* v. *Phillips*, 57 id. 132 ; *Hardy* v. *Adams*, 48 id. 532 ; *Kenney* v. *Greer*, 13 id. 432.    The jurisdiction of said court not having been challenged in the proper time or manner, the appellants can not now avail themselves of the provisions of said statute.

But if the suit is to deemed to be local, we see no reason why it could not be as well brought in Tazewell as in Mason county.    The drainage district is a municipal or *quasi* municipal corporation having within its boundaries certain defined territory, part of which is in Mason and part in Tazewell county.    The corporation must be deemed to be existing and located, for all purposes of jurisdiction, in every part of its territory.    The same thing may also be said of its corporate or municipal authorities, the drainage commissioners.    Furthermore, the action of the commissioners in enlarging the boundaries of the district affected lands situate in Tazewell as well as lands lying in Mason county.    Indeed, the greater part of the lands sought to be annexed to the district seems to be situate in Tazewell county.    If then the action is local, either by reason of the locality of the drainage district or the location of the lands sought to be annexed, the jurisdiction may as properly be in the Circuit Court of Tazewell county as in the Circuit Court of Mason county.    The fact that the County Court of Mason county happened to be the instrumentality through which the original organization of the district was effected, or the fact that the custodian of its records happens to be an officer residing in Mason county, ought not to have, so far as we are able to see, any controlling influence upon the question of jurisdiction.    Neither of these facts makes the drainage district, its officers and records, any the less, in

legal contemplation, a municipal corporation of and having its records and officers in Tazewell county, and subject to the jurisdiction of the courts of that county.

It is strenuously urged that *certiorari* is not the proper remedy, the contention being that the petitioners should have resorted to an information in the nature of a *quo warranto.* We need not pause to determine whether *quo warranto* would lie or not, as we know of no rule which, in this case, would make that remedy necessarily exclusive, even if it should be held to be a proper or available remedy. The only question is whether the alleged defects in the proceedings for the enlargement of the drainage district are such as can be reached and remedied by writ of *certiorari,* and this question is in no way dependent upon whether a writ of *quo warranto* might not also lie to oust the drainage commissioners of their control over the territory annexed, or to dissolve the organization of the drainage district so far as it applies to that territory.

The writ of *certiorari* is a well known common law writ, and in England the Court of King's Bench has always been in the practice of awarding it to inferior jurisdictions commanding them to send up their records for inspection. By adopting the common law, we have adopted this as a recognized legal remedy, and in this State, any court exercising general common law jurisdiction has, unless expressly forbidden to do so by statute, an inherent authority to issue it. *People* v. *Wilkinson,* 13 Ill. 660; *Miller* v. *School Trustees,* 88 id. 26; 3 Am. & Eng. Ency. of Law, tit. Certiorari. Neither in England nor in this State is it held to be a writ of right, but it issues, in proper cases, only upon application to the court, on proper cause shown.

We have repeatedly held that said writ may be awarded to all inferior tribunals and jurisdictions where it appears that they have exceeded the limits of their jurisdictions, or in cases where they have proceeded illegally, and no appeal is allowed, and no other mode is provided for reviewing their proceedings.

*Gerdes* v. *Champion,* 108 Ill. 137; *Doolittle* v. *G. & C. U. R. R. Co.* 14 id. 381; *C. & R. I. R. R. Co.* v. *Whipple,* 22 id. 105; *C. & R. I. R. R. Co.* v. *Fell,* id. 333. The purpose of the writ is to have the entire record of the inferior tribunal brought before the superior court to determine whether the former had jurisdiction, or had exceeded its jurisdiction, or had failed to proceed according to the essential requirements of the law. The trial is solely by inspection of the record, no inquiry as to any matter not appearing by the record being permissible, and if the want of jurisdiction or illegality appears by the record, the proper judgment is that the record be quashed.

Undoubtedly, where the controversy involves the investigation of facts not appearing upon the record, *certiorari* is not the proper remedy. Thus, if in the present case, the right to have the proceedings by which the lands in question were annexed to the drainage district set aside, and the drainage commissioners ousted of the corporate authority they now claim to exercise over said lands, depended upon facts which could be established only by evidence *dehors* the record, the writ of *certiorari* would manifestly be of no avail. It may be admitted that in such case *quo warranto* would be the exclusive remedy. But here the want of jurisdiction, if it exists at all, appears upon the face of the record. If then the proceedings of the drainage commissioners enlarging the boundaries of the district constitute a subject matter which may be reviewed by *certiorari,* that must be held to be an appropriate remedy.

The general rule seems to be that this writ lies only to inferior tribunals and officers exercising judicial functions, and the act to be reviewed must be judicial in its nature and not ministerial or legislative. *Lock* v. *Loxington,* 122 Mass. 290; *State* v. *Mansfield,* 34 Minn. 250; *In re Wilson,* 32 id. 145; *Robinson* v. *Supervisors,* 16 Cal. 208; *Ex parte Fay,* 15 Pick. 243; *Stone* v. *Mayor, etc.* 25 Wend. 157; *Esmeralda* v. *District Court,* 18 Nev. 438; *Thompson* v. *Multnomah County,* 2 Ore. 34. But it is not essential that the proceedings should

be strictly and technically "judicial" in the sense in which that word is used when applied to courts of justice. It is sufficient if they are what is sometimes termed "quasi judicial." The body or officers acting need not constitute a court of justice in the ordinary sense. If they are invested by the Legislature with the power to decide on the property rights of others, they act judicially in making their decision, whatever may be their public character. *Robinson* v. *Supervisors, supra.*

Thus, it is held that this writ lies to review the proceedings of supervisors, commissioners, city councils, etc., in opening, altering or discontinuing public streets and highways as to their legality or regularity, though not as to the question of the expediency of such improvements. 3 Am. & Eng. Ency. of Law, 65, and authorities cited in note 4. So also, in some States, it has been held, subject to the foregoing qualification, to be the proper writ to correct illegalities in the levying of taxes and local assessments by assessors, commissioners, etc., (id.) though in this State it has been refused where the defense of illegality could be made at the hearing of the application for judgment. *Pease* v. *City of Chicago,* 21 Ill. 500. The writ has also been held to lie to review the action of school trustees in uniting and in dividing school districts; *Miller* v. *Trustees of Schools,* 88 Ill. 26; *Moreland* v. *Whitford,* 54 Wis. 150; or of a town board in removing an assessor; *Merrick* v. *Town Board,* 41 Mich. 630; or of a city council in removing a city officer; *Mayor* v. *Shaw,* 16 Ga. 172; or of a city council in granting a ferry license; *Ex parte Fay,* 15 Pick. 243; or of a board of supervisors in ordering an election to re-locate a county seat; *Herrick* v. *Carpenter,* 6 N. W. Rep. 574; or of a board of supervisors in creating the office of clerk of said board and raising certain salaries which had been fixed by statute; *Robinson* v. *Supervisors,* 16 Cal. 208. The foregoing are a few of the many cases where this writ has been held to lie, and sufficiently illustrate the rules above stated.

The proceedings by which the boundaries of the drainage district in question were enlarged by the drainage commissioners were, at least in most of their important features, judicial in their character. The commissioners were required to ascertain and determine from evidence whether the requisite number of the adult owners of land in the district had signed the petition for the annexation of the adjoining lands, and whether the signers were the owners of the requisite proportion of the lands embraced within the district. They were also required to ascertain and determine from evidence whether the lands sought to be annexed to the district were involved in the same system of drainage and required for outlets the drains of the district. When these facts were determined judicially, and not till then, were the commissioners authorized by the statute to enter their order annexing said lands. From their decision no appeal was given, nor were any other means provided by the statute for reviewing their proceedings. In every point of view then the case comes within that class of cases where *certiorari* is an appropriate remedy.

But as the appellants insist that a different rule has been announced by this court in various of its decisions, we will briefly consider the cases to which we are referred as sustaining that contention. *Renwick* v. *Hall,* 84 Ill. 162, *Keigwin* v. *Drainage Commissioners,* 115 id. 347, *Evans* v. *Lewis,* 121 id. 478, and *Samuels* v. *Drainage Commissioners,* 125 id. 536, were all cases in chancery, and it was held that there was no jurisdiction in a court of equity for the reason that there was a complete and adequate remedy at law, and that the legal existence of the several corporations involved in those cases could be determined by an information in the nature of a *quo warranto.* *Trumbo* v. *The People,* 75 Ill. 561, *People ex rel.* v. *Newberry,* 87 id. 41, *Osborn* v. *The People,* 103 id. 224, and *Blake* v. *The People,* 109 id. 504, were proceedings for the collection of either school taxes or special assessments, and the principle decided in those cases was, that the various school

districts and drainage districts in question in those several suits were at least corporations *de facto*, and that the legality of the organization of a corporation could not be attacked collaterally.     *Alderman* v. *School Directors*, 91 Ill. 179, was trespass, and the plaintiffs were directors of a *de facto* district, and the same rule was there declared.   In *Hinze* v. *The People*, 92 Ill. 406, it was held that *quo warranto* would lie against persons who assume to hold offices supposed to be created by a law claimed to be invalid by reason of being in contravention of the Constitution; and in *People ex rel.* v. *Board of Education*, 101 Ill. 308, it was held that *quo warranto* also lies against a corporation which undertakes to exercise powers which it does not possess.

There is nothing decided in any of these cases which shows or tends to show the validity of either of the propositions insisted upon by the appellants in this case.   All that is determined by those cases may be admitted, and yet *non constat* that the common law writ of *certiorari* does not lie in the present suit.   No doubt some expressions were used in the opinions in several of those cases from which it might be inferred that an information in the nature of a *quo warranto* was the only mode of testing the legality of the formation of an existing *de facto* corporation, but that question did not arise and was not decided in those cases.

However, in the case of *Lees* v. *Drainage Commissioners*, 125 Ill. 47, it was expressly held that the common law writ of *certiorari* can not be resorted to for the purpose of determining whether a corporation has a legal existence, and that the validity of its organization can be questioned only by *quo warranto*.   But there is this marked distinction between that case and this.   There the corporate existence itself of a *quasi* municipal body was sought to be challenged by *certiorari*, while here such existence is fully admitted, and the only thing sought to be done is, to call in question the validity of an order of a municipal body admitted to be a corporation both *de facto*

and *de jure,* extending the boundaries of the drainage district. It seems eminently proper, and in consonance alike with the intention of the statute and the rules and analogies of the common law, that a proceeding, the object of which is to forfeit or destroy that corporate life which emanates solely from the sovereign power of the State, should be instituted by the attorney general or state's attorney of the proper county. It is said in section 788 of Angell & Ames on Corporations, citing in that behalf, *Rex* v. *Pasmore,* 3 Term Rep. 244, 245, and *Regents of the University of Maryland* v. *Williams,* 1 Gill & Johns. 365, that, "a *quo warranto* is necessary where there is a body corporate *de facto,* who take upon themselves to act as a body corporate, but from some defect in their constitution, can not legally exercise the powers they affect to use." It appears, however, from the same section, and from the authorities there cited, that where there is a legally existing corporation, capable of acting, which has been guilty of an abuse of power or of its franchises, then, not only will an information in the nature of a *quo warranto* lie, but *scire facias* as well. Nor do we perceive any good reason why a municipal body which has exceeded its jurisdiction and has proceeded illegally, may not, on sound legal principles, be proceeded against by *quo warranto,* by *scire facias* or by the common law writ of *certiorari* indifferently, as the one or the other may afford a proper and sufficient remedy. All of these several writs are direct remedies afforded by the law, and in respect to neither of them can it be said that it is a collateral attack upon the legal existence or organization of the corporation. As has been already suggested, this court has expressly held, in *Miller et al.* v. *Trustees of Schools,* 88 Ill. 26, that the common law writ of *certiorari* was an appropriate remedy to bring before the Circuit Court for review the proceedings of a board of trustees of schools consolidating two school districts into one; and that seems to be going quite as far, if not farther than is demanded by the requirements of the present case.

Various propositions are submitted by counsel bearing upon the question of the validity of the annexation proceedings, but as we are disposed to view the case, but one of them need be considered.    The forty-second section of the Drainage Act of 1885 under which said proceedings were had, provides as follows :  "Drainage commissioners may at any time enlarge the boundaries of their district, by attaching new areas of land which are involved in the same system of drainage, and require for outlets the drains of the district made or proposed to be made, as the case may be, on the petition of as great a proportion of the land owners of the district so enlarged as is required for an original district."

Said section, in vesting the drainage commissioners with power to enlarge the boundaries of their districts, fails to prescribe the mode of procedure or the notice to be given to the owners of the land sought to be annexed.   We can not for a moment entertain the view that it was the intention of the Legislature to leave these matters to the mere discretion of the commissioners, or that it was the legislative intent to vest the commissioners with power to annex to their districts adjoining lands, and thus subject such lands to the extraordinary burdens usually incident to the creation of a drainage system, without securing to the owners a right to notice and an opportunity to be heard.   It is only in accordance with the plainest principles of natural justice that the land owners should have a right to be heard upon the question whether a proper petition has been presented, and whether their lands are involved in the same system of drainage and require for outlets the drains of the district, and an intention to deny such right will not be imputed to the Legislature, at least so long as the terms of the statute are such as to admit of any other conclusion.

In all matters pertaining to the original organization of drainage districts, whether of the class which lie entirely in a single town, or of those which include all or parts of two, three or more towns, in the same or different counties, careful

and elaborate provisions are made for notice to the owners of the lands sought to be included in the district, such notice varying according to the nature of the district and the class to which it belongs. It is probable therefore that the Legislature deemed it unnecessary to repeat those several provisions in the section relating to the annexation of new territory to districts already organized, leaving it to the courts to import into that section, as a matter of construction, the rules as to notice applicable to the class of districts to which the one whose boundaries in each particular instance are sought to be enlarged properly belongs. So far as the land annexed is concerned, the annexation proceedings constitute its original organization into a district, and it is therefore in accordance with natural justice, but it is doing no violence to the language of the statute, to hold that the provisions applicable to notice in case of the original organization of special drainage districts lying, as does the one in question here, in three or more towns, in two different counties, should apply to proceedings to enlarge the boundaries of said district. It may be observed that this view is the one apparently taken by the drainage commissioners themselves in conducting the annexation proceedings, as there was a manifest attempt on their part to comply with the requirements of the statute as to notice.

The provisions of the statute in relation to the organization of special drainage districts embracing territory lying in three or more towns, whether in one or more counties, are to be found in section 50 of the Farm Drainage Act of 1885. That section requires notice to be given by posting up notices in at least five public places in each township in which the proposed district or any part of it shall lie, and also by publishing for three successive weeks a like notice in some newspaper in said county or counties, such notice to contain a copy of the petition, and state the day and term of court when such petition and all persons will be heard. It also provides that "the posting and first publication of said notice shall be at least

twenty days before the hearing of said petition," and also that similar notices be mailed to each person owning lands in the district at least ten days before the hearing.

There can be no doubt that these provisions as to notice are mandatory and therefore jurisdictional. The mandate of the statute is that notice shall be given in the manner and for the time therein prescribed, before the time fixed for the hearing of the petition, and it follows logically that, in case of a failure in any respect to give the notice thus required, the power to hear and grant the petition can not arise. The jurisdiction is a special statutory one, and can be exercised only in the manner and under the conditions prescribed by the statute. Every attempt therefore to grant the petition and organize a district where the prescribed notice has not been given is nugatory and void. In this case it appears upon the face of the record that the first publication of the notice in a newspaper published in Tazewell county was on December 23, and the hearing was had on the 10th day of the following January, the first publication being only eighteen days instead of twenty days before the day on which the petition was heard. Most certainly, if the provisions of section fifty were applicable at all, as we think they clearly were, they not only required publication of notice, but its publication for the full period of twenty days, and such publication was essential to the authority of the commissioners to act. As such publication was not made there was a fatal defect of notice and a consequent defect of jurisdiction.

But it appears that the several land owners upon whose petition the writ of *certiorari* was issued, all appeared at the hearing of the petition for the enlargement of the boundaries of the district and urged their objection to the granting of that petition, and it is now contended that they thereby waived all defect of notice, and should not now be heard to object to the jurisdiction of the commissioners. Some of these parties objected to the consideration of said petition by the commis-

sioners upon the express ground that the statutory notice had not been given, though none of them limited their objections to that point, but all urged other objections involving the merits of the petition.

It is probably true that, by appearing generally and contesting the petition upon its merits, they waived any defect of notice to themselves, and so far as such waiver went, they must now be held to be bound by it, and to have subjected themselves to all the legal consequences resulting therefrom. If jurisdiction of their persons, and through them of the particular lands of which they were the owners was all that was required to make the order of the commissioners granting the petition binding so far as they were concerned, it must be admitted we think that they have no standing here to object that the statutory notice was not given. But their relations to the subject matter of the petition were such as to give them the right to insist that the annexation of the lands proposed to be included in the district should be valid as a whole. All of said lands upon the theory of the petition, were involved in the same system of drainage, and therefore, if brought into the district by valid annexation proceedings, liable to contribute their due proportion of the expense of constructing and keeping in repair the ditches and drains of the district, thus lightening, to the amount of such contributions, the burden resting upon all the other lands in the district.

The subject may be illustrated thus : Suppose the proceeding was for the original organization of a drainage district embracing lands belonging to one hundred different proprietors. No sufficient notice having been given, five of said proprietors, owning but one-twentieth of the lands in the proposed district, appear generally and contest the organization of the district, but their objections being overruled, an order is entered assuming to organize a district embracing the lands of the one hundred proprietors. Such organization would be invalid as to nineteen-twentieths of the land and could impose

no burdens thereon, but if the five owners who had appeared should be held to be estopped to insist upon such invalidity, the organization would as a legal consequence be held valid as to them, and all the expenses and burdens of the district would fall upon their lands. The true view we think is, that each land owner in the district, whether he appeared and contested the organization of the district or not, would have such interest in the question of the legality of the organization as to the lands of the other owners, as would give him the right, in any proper proceeding brought to test the question, to allege want of jurisdiction of the persons of the other land owners in the district, and of the lands owned by them, and to insist that for that reason the entire organization of the district was illegal and void.

The same reasoning applies with equal force to a proceeding like the present for the annexation of lands to a district already formed. In this case large portions of the lands sought to be annexed belonged to owners who did not appear or contest the petition, some of whom appear to have been minors. As to them the annexation preceedings were clearly illegal and void, and being void as to them, we are of the opinion that they were void in toto.

We therefore think that the Circuit Court properly entered a judgment quashing said proceedings, and that said judgment was properly affirmed by the Appellate Court. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*