THE PEOPLE *ex rel.* Chauncey Cadwell *et al.*

*v.*

J. J. MCDONALD *et al.*

*Opinion filed April 20, 1904.*

1. PLEADING—*when granting leave to withdraw plea and file demurrer will not reverse.* Granting leave to defendants to withdraw their pleas and file a demurrer on the day set for trial does not call for reversal, where defendants were required to pay all costs up to the time of the order, including fees of witnesses for that day.

2. SAME—*counts of information must be construed separately.* Counts in an information in the nature of *quo warranto* are distinct, and the allegations of one count cannot be looked to in passing upon the sufficiency of the others.

3. DRAINAGE—*when commissioners of single township cannot organize district.* The commissioners of highways of a single township have no authority to organize a drainage district where the lands involved in the system of drainage extend into two townships.

4. SAME—*no presumptions indulged to aid jurisdiction of commissioners.* Highway commissioners, when organizing a drainage district, are exercising a special statutory authority, and no presumptions of law will be indulged in favor of their acts, which must rest, for their validity, upon the record.

5. SAME—*when information in quo warranto does not show jurisdiction.* An allegation in an information in the nature of *quo warranto* that lands embraced in a drainage district the organization of which is attacked are benefited by the ditch, does not show such jurisdiction on the part of the defendants as makes their determination of the boundaries of the district final, where it is not averred that the district included *all* the lands benefited by the drainage system.

6. SAME—*territorial extent of district is jurisdictional.* Whether application for the organization of a drainage district is made to the highway commissioners of a single township or to those of two, or to the county court, one of the jurisdictional questions to be determined is the territorial extent of the proposed district.

APPEAL from the Circuit Court of Moultrie county; the Hon. W. G. COCHRAN, Judge, presiding.

W. K. WHITFIELD, States Attorney, (EDEN & MARTIN, and MILLER & SENTEL, of counsel,) for appellants.

HARBAUGH & THOMPSON, EDWARD C. CRAIG, and I. R. MILLS, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

On the 16th day of May, 1903, the State's attorney of Moultrie county, upon the relation of Chauncey Cadwell and others, filed an information in the nature of a *quo warranto* against the appellees to test the legality of the organization of a drainage district organized under section 76 of the Farm Drainage act, in Jonathan Creek township, in said county. The information consists of two counts. The first count purports to set out the proceedings for the organization of the district, and charges that the district was illegally organized because the ditches that were found to be made by the voluntary action of the owners of the lands, and the lands involved in the system of combined drainage, lay in both Jonathan Creek and Lowe townships, in said county, and that therefore a union district, extending into both townships, should have been organized, instead of a district comprising lands in Jonathan Creek township alone. The second count in the information is the ordinary and general charge of usurpation. To the information appellees filed their plea of justification, and to this plea a number of replications were filed by appellants and rejoinders to the replications, and the cause was set down for trial for the 22d day of October, 1903. Upon that date appellees made their motion to be allowed to withdraw their plea and all subsequent pleadings and to file demurrer to the information. This motion the court allowed, imposing as terms the payment of all costs, including the fees of the witnesses summoned for that day. A general demurrer assigning special causes was filed, and upon a hearing thereof by the court it was sustained and the information quashed. Exceptions were taken to the action of the court in permitting the withdrawal of the pleas and the order sustaining the demurrer. Appellants stood by their information, and prayed and prosecuted this appeal.

The granting of leave to the appellees to withdraw the plea and interpose the demurrer was so far within the discretion of the court that this court would not be warranted in reversing upon such ground unless it were shown that in the exercise of its supposed discretion the court had abused its powers. (*Leigh* v. *Hodges*, 3 Scam. 15; *New England Ins. Co.* v. *Wetmore*, 32 Ill. 221; *Miles* v. *Danforth*, 37 id. 156; *Leonard* v. *Patton*, 106 id. 99; High on Ex. Legal Rem.—3d ed.—par. 717, p. 673.) The court, in this case, imposed upon appellees the payment of all costs as the terms upon which the order was made, and we cannot say there was an abuse of discretion or such injury to appellants as calls for a reversal upon that ground.

We think, however, the judgment of the circuit court should be reversed. The information contained two counts, and, as has been said, the second count is a general charge of usurpation, charging that the appellees, "for the space of twenty days last past and more, in the county aforesaid, unlawfully have usurped and held jurisdiction over certain lands of relators," (describing the lands,) "and then and there, on, to-wit, the 27th day of April, A. D. 1903, at the county aforesaid, have pretended to organize a drainage district under the provisions of section 76 of the Farm Drainage act, * * * upon the petition of one John Fulton, and to include therein said lands of relators, and other lands, without having had any jurisdiction or authority of law to organize said proposed drainage district, and said commissioners then and there, under said pretended order, have proceeded to classify the lands of relators, and other lands, for the purpose of assessing benefits to said lands on account of the said proposed improvements to be made under the drainage district organized under said pretended order, and under said pretended assessment said commissioners are attempting to take or levy upon the property of relators, and to take the lands of relators upon which to improve or construct the ditches in said proposed drain-

age district, without due process of law; and said com-
missioners still do have and execute jurisdiction over
said lands without any right, warrant or title whatever,
which jurisdiction over said lands said commissioners of
highways, during all the time aforesaid, at the county
aforesaid, upon the People of the State of Illinois afore-
said, have usurped, and still do usurp," etc.

Appellees say of this count of the information that
it is but a continuation of the first count, and that if it
be not, and be treated as an independent count, still, in-
asmuch as it alleges the same organization of a drainage
district, of the same number, on the 27th day of April,
1903, the court is authorized to regard it as the same
matter, and to look to the first count and apply the alle-
gations of that count to the second, and thus hold that,
both relating to the same thing and the first count show-
ing, as appellees contend, that they rightfully are exer-
cising the acts complained of, the demurrer should have
been sustained to both counts alike.

We do not adopt the view that the counts are not dis-
tinct and separate; nor do we know of any rule of plead-
ing by which the allegations in one count may be looked
to in passing upon the sufficiency or insufficiency of an-
other count.    Appellees proceed in their argument upon
the theory that the two counts shall be construed as one,
or, at least, that they shall stand or fall together, and
the greater part of the argument is devoted exclusively
to matters contained in the first count of the information.
With reference to that count they say that there were
presented to the trial court two propositions,—one a
proposition of law and the other a proposition of fact.
The proposition of fact is, that the allegations of the in-
formation show a clear and legal right upon the part of
appellees to hold the offices and exercise the franchise
complained of in the information, and appellees invoke
the rule announced in the case of *People ex rel.* v. *Ottawa
Hydraulic Co.* 115 Ill. 281, where it is said (p. 288): "Where

a number of individuals assume to act as a corporation, an information containing a general denial of their right to do so will be sufficient to put them to their plea of justification; but if the information attempts to set out their title, as was done here, and the facts disclosed for that purpose, when taken in connection with other facts appearing upon the face of a public statute, make the title good, the information will be necessarily bad." And appellees argue that the first count of the information does state facts which disclose, when taken in connection with the public law, namely, the Farm Drainage act, the clear legal right of appellees to exercise the acts complained of. Appellees then follow the various allegations of the information, which, in general terms, point out the various steps taken by appellees for the organization of the district in question; and it may be said that, in a general way, the information does show that appellees, in the organization of the district in question, did take all the steps required by the statute to legally perfect such an organization. Appellees further say that section 31 of article 4 of the constitution, which was adopted in 1878, authorizing the General Assembly to permit the owners of land to construct drains, ditches and levees for agricultural, sanitary or mining purposes, across the lands of others, and "provide for the organization of drainage districts and vest the corporate authorities thereof with power to construct and maintain levees, drains and ditches," etc., gives the General Assembly plenary power to adopt such methods and confer the powers of organization upon such bodies as it sees fit, and that, having done so, those bodies so constituted are possessed of all the powers conferred upon them by the General Assembly, and all other powers necessary to make the powers thus conferred effective; that in the organization of drainage districts the legislature has seen fit to confer upon the commissioners of highways, who organize drainage districts under section 76 in ques-

tion, the power to determine what lands shall be included in the district, and that when the commissioners have so determined their finding is final.    If this position be admitted to be sound, we are still unable to adopt the view that the information in this case shows sufficient to support the contention of appellees.    By section 76 of the Farm Drainage act, which is found in chapter 42 of Starr & Curtis' Statutes, (vol. 4, pp. 470, 471,) districts organized thereunder are to "include all the lands to be benefited by maintaining these ditches;" and further on in the section the General Assembly has sought to put a further interpretation upon that meaning by declaring, "it is the intent of this act to include all lands that would be damaged by filling the original ditch."

We are not called upon to determine what effect the interpretation placed upon the act by the legislature shall have upon this court, but it is clear from the provisions of the act that the intention was that all the lands to be benefited by maintaining the ditches should be included in the district, and to effectuate this end three classes of ditches are provided for: the district where the lands lie in a single township, and which we may regard as the unit of drainage under this act, and which may be organized by the commissioners of highways of the township; districts where the lands lie in two townships, for which three commissioners of highways from the two townships are selected and make the organization, and which are denominated "union districts;" and districts where the lands involved lie in three or more townships, which are called "special districts," and which latter districts can only be organized in the county courts. These provisions for the various kinds of districts were for the purpose of providing a proper body that should have jurisdiction over the lands involved in the combined system of drainage, whether the same be confined to one or to a number of townships.    Whether the application for the organization of the district be

made to the commissioners· of a single township, or to two townships, or to the county court, one of the things to be determined, and which we regard as jurisdictional, is the territorial extent of the proposed district. The county court has no authority to organize a district in a single township, nor have the commissioners of a single township authority to organize a district where the lands involved in the system of drainage extend into two or more townships. It is true that we have said that such bodies, in determining what lands shall be included in the districts, are called upon to exercise judgment, and that their acts in that respect are of a judicial character, and, unless fraud be charged, are not subject to review by *quo warranto.* (*Mason and Tazewell Drainage District v. Griffin,* 134 Ill. 330; *People ex rel. v. Cooper,* 139 id. 461; *Gauen v. Moredock Drainage District,* 131 id. 446; *People ex rel. v. Mineral Marsh Drainage District,* 193 id. 428.) But it must be borne in mind that the commissioners of highways, when acting in the organization of a drainage district, are exercising a special authority conferred upon them by the statute, and in favor of their acts there are no intendments or presumptions of law. Whatever they do must be found from their record, and unless sufficient is found that it can be said that they have acted upon the particular matters required, the law does not, and the courts cannot, presume that they have done so. The information alleges that the commissioners, at their meeting at the time of the organization of the district, found that "lands embraced in said petition, including the lands of the relators, are benefited by the maintenance of the open ditch and would be damaged if closed." The allegation in the information that raises the question of the jurisdiction of appellees to organize the district is, that the district did not include all the lands benefited by maintaining the ditches, but that a large body of the lands, and a large portion of the ditches that properly belonged in the district, lay in Lowe township. There is

no allegation in the information that the commissioners determined that the district as organized or as petitioned for, or as proposed to be organized, included *all* the lands to be benefited by maintaining the ditches.

The point here discussed may be well illustrated by quoting from an averment of the plea of appellees that was withdrawn, in which plea the order and finding of the commissioners at their preliminary meeting, had after their examination of the lands for the purpose of determining the jurisdictional questions set forth, is as follows: "We further found that the lands specified in said petition are all the lands that will be benefited by maintaining the said drainage ditches and are all the lands that will be benefited by the proposed improvements." No such allegation as the above is found in the information, and if it were, we would be disposed to hold that the demurrer to the first count of the information was properly sustained, as there are no allegations of fraud on the part of the commissioners or that fraud operated in any way in the organization of the drainage district. But from the mere allegation in the information that the lands that were included in the district in fact are benefited by the maintenance of the open ditch and would be damaged if it were closed, we are not authorized to indulge the presumption, or to hold that equivalent to the allegation, that the commissioners examined not only the lands included in the petition but the lands involved in the same system of drainage, and that the lands included in the district were all the lands interested in maintaining the ditches.

The demurrer should have been overruled. The judgment is reversed and the cause remanded for such further proceedings as to law and justice shall appertain.

*Reversed and remanded.*