JACOB FRANK *et al.*

*v.*

GILBERT ROGERS.

*Opinion filed February 21, 1906—Rehearing denied April 4, 1906.*

1. DRAINAGE—*petition for assessment for repairs must be filed before notice is given.* A petition for an assessment to make drainage repairs under section 37 of the Levee act, as amended in 1885, (Laws of 1885, p. 124,) must be filed before the notice of the hearing is given, and such notice must be given by the court, and not by the drainage commissioners.

2. SAME—*procedure where repair assessment proceeding is before a justice of the peace.* Where a proceeding for assessment for drainage repairs is to be begun before a justice of the peace, the commissioners must first file with the justice a petition containing a sworn and itemized statement of previous receipts and expenditures, together with a description of the proposed work; and such petition and report are essential to the jurisdiction of the justice to give notice of hearing as required by statute.

3. SAME—*a justice has no jurisdiction if cost of work exceeds $2000.* Under section 48 of the Levee act a justice of the peace has no jurisdiction of a proceeding to levy a drainage assessment if the cost of the proposed work, whether it be for the original construction of the drains and ditches or for repairing, enlarging or improving the system in a district already organized, exceeds the sum of $2000, and any assessment levied in such case is void.

4. SAME—*section 34½ of Levee act, relating to construing act, does not apply to jurisdictional defects.* Section 34½ of the Levee act, requiring liberal construction of the act and providing that the judgment confirming a drainage assessment shall be conclusive of the regularity of prior proceedings, does not apply where there is an entire want of jurisdiction appearing upon face of the record.

APPEAL from the County Court of Whiteside county; the Hon. HENRY C. WARD, Judge, presiding.

C. L. & C. E. SHELDON, and FRANK J. BOWMAN, (J. J. LUDENS, of counsel,) for appellants.

F. E. ANDREWS, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

At the June term, 1905, of the county court of Whiteside county, the county collector made application for judgment and order of sale against the lands of the appellants for delinquent drainage taxes due Union Drainage District No. 1 in Hahnaman and Montmorency townships, in said county. Objections were filed by appellants, which were overruled by the court and judgment entered as prayed. To reverse that judgment an appeal has been prosecuted to this court.

Union Drainage District No. 1 was organized in 1882 before a justice of the peace, as provided in the act of May 29, 1879, entitled "An act to provide for the construction, reparation and protection of drains, ditches and levees, across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts." On April 26, 1904, the three commissioners of

said district caused the following notice to be published and posted:

"Public notice is hereby given that on the 16th day of May, 1904, at the hour of 10:00 A. M., the drainage commissioners of Union Drainage District No. 1 of the townships of Hahnaman and Montmorency, in the county of Whiteside and State of Illinois, will present their petition to J. M. Mosher, Esq., justice of the peace, at his office in Deer Grove, in said town of Hahnaman, for an order to repair, enlarge and improve the ditches and drains in said district, and to levy an additional assessment upon the lands in said district to secure funds to carry on the said improvements and to keep the same in repair, and for an order requiring the commissioners of the said district to make the assessments of benefits and damages in lieu of a jury, when and where all persons interested may appear and be heard if they see fit.

ED. DEVINE,
MORRIS S. MURPHY,
JOHN RENNER,
*Drainage Comrs.*"

April 26, 1904.

On May 16, 1904, there was filed with J. M. Mosher, justice of the peace, the following petition: "We, the undersigned land owners in Union Drainage District No. 1 of the towns of Hahnaman and Montmorency, in the county of Whiteside and State of Illinois, most respectfully petition the commissioners of said drainage district to proceed at once to clean out and deepen and enlarge the main ditch and all lateral ditches in said district in such a way as to thoroughly drain all the lands in said district, and that the same be done by special assessment levied upon lands in said district in proportion to the original assessments, so far as the same is just and right." (Signed by M. J. Higgins and twenty-five others.) On the same date the commissioners presented to Justice Mosher a report showing the organization of the district and the amount of money assessed and expended; also that the ditches were badly out of repair, inadequate in size and needed to be deepened an average of six feet, and asking said justice to enter an order authorizing the commissioners to levy an additional assessment for the purpose of making the said improvements and remove 95,268 yards of earth, at an expense of $12,543.84. In

pursuance to said petition and notice the justice entered an order authorizing the commissioners to make the improvements prayed for and to levy an additional assessment of $12,543.84, which amount was to be levied by the commissioners in place of a jury. On July 8, 1904, an order was entered by the justice confirming the assessment roll as presented by the commissioners. The first installment of the assessment was due October 1, 1904, and the same not having been paid by appellants, application was made by the county collector for judgment and order of sale.

Many objections are urged why the judgment and order of sale should not have been entered by the county court, but we deem it necessary to consider only two of them. One of those objections is, that the notice set out above, required to be given under section 3 of chapter 42, (Hurd's Stat. 1903, p. 716,) was fatally defective because it was published before the petition for the improvement was filed with the justice, and did not state in what court the petition was filed, and was signed by the commissioners instead of by the justice.

The act of May 29, 1879, under which the district was organized, provides for every step necessary for the organization of the drainage district and also for the manner in which its business must be carried on. No point is made as to any of the proceedings prior to April 26, 1904, when the commissioners began proceedings for enlarging and cleaning the ditch which had been originally dug.

Section 37 of the act (Hurd's Stat. 1903, p. 726,) provides that "assessments from time to time may be levied on the land within any district when it shall appear to the court that the previous assessment or assessments have been expended, or are inadequate to complete such work, or are necessary for maintenance and repair, or when it shall become necessary, for the construction of any additional work, or the completion of any work already commenced * * * under the order and directions of the court or justice of the

220—14

peace, if the original proceeding shall be before a justice.of the peace, * * * on the petition of the commissioners, accompanied by an itemized statement of accounts made by the commissioners under oath, showing the moneys received by the district and the manner in which they had been expended, together with the plats-profiles of such additional work and estimated cost of the same; two weeks' previous notice of the time set for the hearing of said petition in the manner required by section 3 of this act having been given. Upon the hearing of such petition the court may grant the prayer of the same; and with like proceedings and notice, as near as may be, as in cases of original assessments of damages and benefits under this act, and such additional assessment or assessments, when made, shall have the same force and effect and be collected in the same manner as original assessments."

Section 3 (Hurd's Stat. 1903, p. 716,) provides that, such petition being filed, the clerk shall cause three weeks' notice of the presentation and filing of such petition to be given, addressed to all persons interested, by posting notice thereof at the door of the court house of the county in which the district is situated, and in at least ten of the most public places in such proposed district, and also by publishing a copy thereof at least once a week, for three successive weeks, in some newspaper published in the county. Such notice shall state when and in what court said petition was filed, the starting point, route, termini and general description of the proposed work, the boundaries and names of the proposed district, and at what term of the said court the petitioners will ask a hearing of said petition.

Under these two sections it was the duty of the commissioners first to file with the justice a petition containing a sworn and itemized statement of receipts and expenditures of assessments previously made, together with a description of the proposed work which they contemplated doing. This report and petition constitute the foundation or basis. upon

which the new assessment is to be levied. Without them the justice had no authority to begin proceedings by giving the notice. As soon as the petition was filed it became the duty of the justice to give notice as required by section 3. The record in this case shows that no petition was filed with the justice on April 26, prior to the giving of the notice, but was filed on May 16, the day of the hearing. The notice required by section 3 was not given by the justice, but was given by the commissioners, signed by them, and did not contain all of the requirements of section 3.

In the case of *Commissioners of Drainage District* v. *Griffin,* 134 Ill. 330, speaking of the notice required under section 50 of the Farm Drainage act of 1885, we said, on page 347: "There can be no doubt that these provisions as to notice are mandatory, and therefore jurisdictional. The mandate of the statute is that notice shall be given in the manner and for the time therein prescribed, before the time fixed for the hearing of the petition, and it follows, logically, that in case of a failure in any respect to give the notice thus required, the power to hear and grant the petition cannot arise. The jurisdiction is a special, statutory one, and can be exercised only in the manner and under the conditions prescribed by the statute. Every attempt, therefore, to grant the petition and organize a district where the prescribed notice has not been given is nugatory and void."

The case of *McChesney* v. *People,* 148 Ill. 221, was an application by the county collector of Cook county for a judgment against lands for the collection of taxes and special assessments. The appellants appeared in the county court and objected to the rendition of judgment on the ground that the court had no jurisdiction to render judgment of confirmation for the want of proper notice. On the application for judgment they were allowed to show that the notices appearing in the record were not legal because two of the commissioners and a stranger had signed them, and not the three commissioners jointly. Section 27 of the act

under which the assessment was made in that case required the commissioners to give notice of such assessment and the term of court at which a hearing would be had. We said (p. 225): "It is a general rule, and one well understood, that in a proceeding for the collection of taxes, where the owner may be deprived of his property, the requirements of the statute must be strictly followed. * * * The object of this requirement is to afford the owner whose land has been assessed an opportunity to appear and contest the validity and justness of the assessment, and unless the notice required by the statute has been given, the court in which the assessment roll has been filed has no jurisdiction to confirm the assessment. The land owner, when notified by the commissioners, as provided by the statute, is bound to appear and make his defense, and if he fails, the judgment of confirmation will be conclusive on him, but he is under no obligation to pay any attention to a notice given by persons other than the commissioners who have been appointed to make the assessment."

In *Schertz* v. *People,* 105 Ill. 27, it was held that on an application for judgment for a delinquent special assessment the record of the entire proceedings, including the judgment of confirmation, was before the court, and if it appeared that those proceedings were so defective as not to authorize the court to act, then the objections could be made as well on application for judgment as at any other time, on the ground that when the court acts without jurisdiction its judgments and orders are void and can be attacked at any time before any court. To the same effect are *Fortman* v. *Ruggles,* 58 Ill. 207, and *Senichka* v. *Lowe,* 74 id. 274.

In the case of *Payson* v. *People,* 175 Ill. 267, speaking of section 3 of the act in question, on page 273, we said: "Section 3 of the Drainage act requires that when a petition to organize a drainage district is filed, the clerk of the county court shall cause three weeks' notice of the presentation and filing of such petition to be given by publication, and by

posting notices thereof at the door of the court house of the county, and in at least ten of the most public places within such proposed district; that if any of the land owners of the district are non-residents of the county or counties in which the proposed district shall lie, the petition shall be accompanied by an affidavit giving the names and places of residence of such non-residents, if known, and if unknown, stating that upon diligent inquiry their places of residence cannot be ascertained; and that the clerk shall send a copy of the notice aforesaid to each of the said non-residents within three days after the first publication of the same. This provision of the statute should be followed in good faith, to the end that the non-resident land owners may have notice of the proceedings instituted against them. In the case at bar the petitioners knew appellant was interested in the land, for they were so notified. They knew he owned the land, and were told he still owned it by his tenant in possession. They knew his residence, but in the affidavit attached to the petition, for some reason unknown, they neglected or refused to insert his name as owner, and hence he had no notice as a matter of course, and not being named as a party nor as interested, has a right to question every act taken against his interest. The certificate of the clerk as to mailing notices shows he only sent notices to those whose names were in the affidavit attached to the petition, and this excludes the idea that notice was sent to appellant. We hold that under the statute, and under the facts as they appear in this record, the court had no jurisdiction of the person of appellant, and he has a right in this proceeding to contest the fact of jurisdiction of the court in including his lands within the district."

In the latter case we also held that the court's finding of jurisdictional facts in a proceeding to levy an assessment for drainage improvement is not conclusive in a collateral proceeding where the record itself shows that the evidence of jurisdiction upon which the court acted is insufficient, and

that a land owner not named as a party to proceedings to organize a drainage district and levy an assessment for its improvement, who does not appear, and upon whom no notice is served, or attempted to be served, as required by the statute, is not concluded by the judgment of confirmation, and he may raise the question of want of jurisdiction upon application for judgment of sale.

Our attention is called to the fact that under section 34½ of the act (Hurd's Stat. 1903, p. 725,) the proceeding is to be liberally construed to promote the purpose intended, and the collection of the assessment shall not be defeated by reason of any omission, imperfection or defect in the organization of the district, or in any proceedings occurring prior to the judgment of the court confirming the assessment of benefits and damages, but the judgment shall be conclusive that all prior proceedings were regular and according to law. This section refers to irregularities after the court has acquired jurisdiction of the person of the defendant and the subject matter of the suit, but does not apply where there is an entire want of jurisdiction over the person of the defendant, and that want of jurisdiction appears upon the face of the record. Such a defect may be taken advantage of collaterally at any time. In the attempt to levy the additional assessment there was an entire failure to comply with the statute. No petition and report were filed until the time of the hearing and no legal notice was published or posted. Appellants did not enter their appearance or in any way waive this defect, and such failure to comply with the statute was fatal to the jurisdiction of the court. Hence appellants were not bound by the judgment, and their objection in this respect should have been sustained by the county court.

It is also insisted that the assessment is void for the reason that the justice had no jurisdiction to entertain the petition because the additional work contemplated exceeded in cost the sum of $2000. Section 48 (Hurd's Stat. 1903, p. 731,) provides that when the cost of any proposed drain,

ditch, levee or other work authorized by this act to be done will not exceed the sum of $2000, the petition may be filed with a justice of the peace in the county where the land affected, or the major part thereof, is situated, and all proceedings authorized by the act to be done by the county court in cases where the petition is filed in such court may be had before such justice of the peace, the justice of the peace performing all the services and duties required of the clerk of the county court, and the proceedings shall be conducted in the same manner, as near as may be, as cases commenced by petition before such county court. At the time the district was organized a justice of the peace had jurisdiction where the cost did not exceed $5000, which amount was subsequently changed to $6000 and later to $2000. The original cost of the work was about $2500, and required the removal of about 10,500 cubic yards of additional earth. The petition for the additional work required the removal of 95,268 cubic yards of earth, at a cost of $12,543.84. It was evidently the intention of the legislature to give jurisdiction to justices of the peace in cases where the work proposed was not very extensive, and to require all other work to be done under the direction of the county court.

It is, however, insisted by appellee that there is nothing in the statute limiting the jurisdiction of the justice after the district has been organized and the original work completed, and that as to all subsequent work there is no limit to the jurisdiction. We do not think, under the statute, this contention can be maintained. The section under consideration provides that where the cost of any proposed drain, ditch, levee *or other work authorized by this act to be done* will not exceed $2000, the petition may be filed before a justice of the peace. The words "other work authorized" include the repairing, enlarging or improving of districts already organized. To say otherwise would be to permit a district to be organized upon an expenditure of less than $2000, and then spend millions of dollars on the repairing, enlarging

and improving of the same.  Such a construction was not intended by the legislature and is not sustained by the language used in the act.

The improvement contemplated exceeded in amount the jurisdiction of the justice, and the assessments levied against appellants' lands were for that further reason null and void.

The judgment of the county court will be reversed and the cause remanded, with instructions to sustain the objections.                              *Reversed and remanded.*